W. S. COZART v. S. A. FLEMING, J. M. SIKES, Clerk of the Superior Court, JAMES A. BULLOCK, JOE S. ROYSTER and CHARLES F. CREWS.

(Decided December 13, 1898).

*Sheriff—Tie Vote—Contested Election—Quo Warranto —Mandamus—Injunction.*

1. The failure of a new Sheriff to qualify, when it is undetermined who is elected and no certificate has been issued to him, does not authorize a declaration by the County Commissioners that the office is vacant. The old Sheriff holds over until his successor is declared elected and qualified. *The Code*, Section 1872.

COZART *v.* FLEMING.

2. It is not permissible to try the title to an office by injunction, nor by mandamus—a civil action in the nature of *quo warranto*, is the appropriate remedy, to be tried before a judge and jury.

3. A contest cannot be maintained over the certificate, which conveys only a *prima facie* title to the office subject to the declaration of the right in a *quo warranto* proceeding. The officer charged with the duty of issuing the certificate settles that matter conclusively so far as its issuance is concerned, but at his peril, if he act corruptly.

4. The Clerk does not have the power in the first instance to count the ballots and declare the result, but merely to add up the various precinct returns legally made and ascertain the result.

5. A tabulation of the result, by the Clerk, in the manner required by law is *prima facie* correct, and can only be questioned in a *quo warranto* proceeding.

MONTGOMERY, J., dissenting: A proceeding in the nature of *quo warranto* cannot be maintained, where the defendant is not in possession of the office, and where the action is brought before the term of the office is to begin.

CIVIL ACTION, in a contested election, for the office of Sheriff of Granville County, heard before *Timberlake, J.*, at CHAMBERS in Roxboro, November 16, 1898, on application by plaintiff for orders of restraint. The plaintiff, Sheriff of Granville County, alleges in his complaint, that he was a candidate for re-election on November 8, 1898, and that the defendant S. A. Fleming was his competitor—and from the precinct returns sent to the Clerk of the Court, J. M. Sikes, as added up by him on November 10th, 1898, it appeared that the plaintiff and Fleming had each received 2216 votes, being a tie, and the Clerk so declared at the courthouse door. That a number of errors and mistakes were made by various precinct boards of election in said election, which are specified and enumerated, to plaintiff's prejudice and injury, whereby illegal ballots were cast for his opponent and plaintiff was deprived of votes to which he was

legally entitled.    That these errors and mistakes pointed out show that he was clearly elected to said office of Sheriff at the election held on November 8, 1898, and that he verily believes that a recount of the ballots cast for Sheriff at all said precincts would show a gain and a good majority in his favor, and that he should be declared to be duly elected Sheriff for the term of two years from and after the first Monday in December, 1898.    That the defendant J. M. Sikes, Clerk Superior Court, having announced upon the face of the returns the failure of a choice for the office of Sheriff, has announced his purpose, upon authority of Section 25 of the Election Law, to call another election and is now about to issue his writs if not restrained by the order of this Court.

That the defendants, Jas. A. Bullock, Joe S. Royster, and Charles F. Crews, County Commissioners elect, are by law empowered and will, unless restrained by this Court, on the first Monday in December, 1898, declare said office of Sheriff to be vacant, and will proceed to elect some person, other than plaintiff, to said office.

Wherefore, plaintiff prays judgment:

1. That he be declared to have been duly elected Sheriff of Granville County at election on November 8, 1898, for two years from first Monday in December, 1898.

2. That the defendants, Commissioners elect, be restrained from declaring said office vacant and from attempting to elect a successor to plaintiff. .

3. That plaintiff may continue to hold the office until this action is determined.

4. That the Clerk of this Court be restrained from issuing his writs for the election of a Sheriff until this action is determined.

5. That the Clerk be required forthwith in the presence of the parties, plaintiff and Fleming, and not exceeding three representatives of each of them, to recount the ballots cast for Sheriff, as now in the county boxes, and report the result to this Court without delay. . The complaint was verified and used as an affidavit.

### RESTRAINING ORDER.

His Honor adjudged: That J. M. Sikes, Clerk Superior Court, be and is hereby restrained and enjoined from making any call for a new election for the office of Sheriff of Granville County, or from issuing his writs, &c., until the further order of this Court, and that said Clerk show cause before me at Oxford on November 21, 1898, why this order shall not be continued until the hearing also, that the said Clerk proceed at 9 o'clock on the morning of November 19, 1898, in the presence of plaintiff and Samuel A. Fleming, or their representatives, not exceeding three persons for each side to open the ballot boxes of the various precincts of Granville County as returned to him, and recount the ballots, containing the names of persons voted for Sheriff, and make report to this Court at Oxford on 21st November, 1898.

The ballots to be again sealed up and locked, when counted.

The defendants, J. A. Bullock, Joseph S. Royster and C. F. Crews, are to show cause before me on November 21, 1898, at Oxford, if any they have, why. they should not be restrained from declaring said office of Sheriff vacant.

The defendants all file answers.

Samuel F. Fleming admits that the plaintiff and him-

self according to the precinct returns, added up, each received 2216 votes for Sheriff, but he denies the various errors and mistakes alleged by plaintiff to have been committed in the reception and exclusion of ballots to plaintiff's prejudice, and on the contrary avers and proceeds to specify and enumerate various errors and mistakes, and improper methods to defendant's prejudice, which if corrected would show him to have been honestly elected by a clear majority. Though believing he has been fairly and honestly elected to the office of Sheriff, he is perfectly willing to again submit the matter to the vote of the people and abide their decision, whatever that may be.

The county commissioners-elect answer: That they have not yet been inducted into office and have no existence as a board of commissioners, and cannot exercise any of the functions of the board; that no purpose of theirs of declaring the Sheriff's office vacant has been considered by them as a board, nor have they expressed any intention of so doing. They submit that they are not proper parties to this proceeding, and ask to be dismissed.

J. M. Sikes, Clerk of Superior Court, answered: That he has no cause nor reason why he should not obey the order of the Court, nor any cause why the same should not be continued until the hearing, and that he has obeyed the same by making the recount of the votes as directed, which resulted.

For Wiley S. Cozart,      2,216.

For Samuel A. Fleming,   2,208.

In addition to these were 18 ballots, of which 14 of them were noted on detached pieces of paper; 10 contained the name of Samuel A. Fleming for Sheriff, 4 contained the name of Wiley S. Cozart for Sheriff, and

are submitted for the examination and consideration of the Court.

### JUDGMENT.

His Honor declared upon the returns and recount of said votes cast for Sheriff, the plaintiff hath received a majority of two votes and is declared elected to the office of Sheriff of Granville County for two years from 1st Monday in December, 1898, and the Clerk of this Court is enjoined from calling any further election for Sheriff, and the defendants, Crews, Royster and Bullock, upon their induction into office, are to induct the plaintiff into the office of Sheriff upon tendering the bonds required by law and taking the oath of office. And the Clerk is to declare the result of this action at the court house door and give the plaintiff a certificate of his election as aforesaid.

This judgment, declaring the result of the election for Sheriff, shall not be held to preclude the defendant from litigating his claim for said office upon the other grounds set forth in the answer and not herein passed upon, either by *quo warranto* after plaintiff's induction into office, or, if he shall prefer, in this same action, which if he so elect may be tried upon the other matters alleged in the complaint and answer or amendments thereof made ten days before the next term.

Defendants excepted.

A motion made by the defendants, other than the Clerk, to vacate the restraining order and dismiss the proceedings was denied by the Court.

Defendants excepted.

Appeal by defendants, S. A. Fleming, James A. Bullock, Joe S. Royster and Charles F. Crews, from the ruling and judgment of the Court.

*Messrs. A. W. Graham and J. W. Graham*, for defendants (appellants).

*Mr. T. T. Hicks*, for plaintiff.

CLARK, J., delivers the opinion of the Court.
MONTGOMERY, J., dissenting in part.

CLARK, J.:  The Clerk of the Superior Court of Granville County upon tabulating the returns of the recent election for Sheriff of that county, ascertained that there was an equal number of ballots cast for the relator and for his competitor, the defendant Fleming, and was about to proceed to order a new election to be held for that office as required by the statute; whereupon the relator, who was the Sheriff of the county and a candidate for re-election, began this action on November 15, 1898, against said Fleming, the Clerk of the Superior Court, and the three newly elected commissioners who had not then qualified (and could not do so till the first Monday in December) alleging in substance:

1. That the count was incorrect, and that upon a recount of the ballots he would be found to have received a majority, and asking the Judge to issue a rule on the Clerk to show cause why he should not make such recount and declare the correct result.

2. An itemized statement of illegal votes counted for his competitor, and legal votes for himself rejected, intimidation and like matters proper to be inquired into upon a *quo warranto*.

3. That the Clerk had declared his intention to order a new election, averring the needless expense thereof to plaintiff and the county, and asking a restraining order against such proceeding, until the proper result of the election already had was ascertained.

4. That the newly elected county commissioners would, on their qualification proceed to declare the office vacant and elect a successor, and asking a restraining order to prevent such action.

The defendant Fleming answered that he himself had in truth received a majority of the votes cast and on a recount should be declared Sheriff, denying all the allegations of the complaint as to the items affecting the result, and also on his part setting out an itemized statement of illegal votes cast for his competitor and legal votes for himself rejected, intimidation, fraud and other particulars proper in a *quo warranto*, but at the same time averring his willingness to submit the issue again to the arbitrament of the ballot box and objecting to the order for a recount.

The Clerk answered, expressing his willingness to submit to the orders of the Court.

The newly elected commissioners in their answer aver that they had not qualified, had not determined upon any action as to declaring the office vacant, and asking that the action be dismissed as to them as both premature and without warrant in law. It is well to dismiss this branch of the case here, by saying that their contention was well founded in both particulars. The proceeding as to them was not only premature, but, if it had not been, it would have been in effect an attempt to try the title to an office by an injunction, which is not permissible. *Patterson* v. *Hobbs*, 65 N. C., 119. Besides, if the commissioners had assumed to declare the office vacant and elect another, there would have been no resultant damage justifying an injunction. The title would still be inquired into by *quo warranto*. The county commissioners should be dismissed with their costs. It is proper, however, to add that the failure of

a new sheriff to qualify when it is undetermined who is elected, and no certificate has been issued to him, does not authorize a declaration that the office is vacant. The old sheriff holds over until his successor is declared elected and qualified. Code, Section 1872.

The Court, in view of the provision in Section 7 of the Election Law of 1895, Chapter 159 (amended by Chapter 185, Laws (1897) that any Judge of the Superior or Supreme Court may issue a rule upon any election officer "to show cause why he has not performed or shall not perform any specified act or duty required by the election law, or why he or they shall not perform or execute this Act in any specified way so as to best give effect to the intent and purposes of the election law," issued the rule as prayed, and on its return ordered the Clerk to make the recount in the presence of the parties and others. On such recount of the ballots the Clerk reported that the relator had received a majority of eight votes. On review of the disputed items of this report, the Judge found that the relator had received a majority of two votes, and was entitled to the certificate of election, which he ordered the Clerk to issue, and he issued his mandamus to the county commissioners to induct the relator into office upon giving the bonds and taking the oaths required by law, reserving, however, to the defendant Fleming the right to contest either in this proceeding, or, at his election, in an action of quo warranto—the correctness of the result as affected by the legality or illegality of ballots rejected and received, and the intimidation and fraud alleged in the pleadings, as to which matters he refused to hear evidence at the hearing in Chambers.

His Honor conceived rightly that the title to the office, so far as dependent upon the reception or rejection of

ballots, intimidation, fraud, etc., could only be determined before a judge and jury in a *quo warranto*, but he erred in thinking that a contest could be maintained over the certificate which conveys only a *prima facie* title to the office, subject to the declaration of the right in a *quo warranto* proceeding.

If the Clerk had refused or failed to tabulate the result in the manner required by law, he could have been compelled by a rule to perform that duty (*Moore* v. *Jones*, 76 N. C., 188). But here the Clerk had acted and in the mode pointed out by the statute. His declaration of the result is *prima facie* correct and can only be questioned in an action of *quo warranto*. In *Swain* v. *McRae*, 80 N. C., 111, decided at a time when the tabulation was made by a board of canvassers (instead of by the Clerk as is now the law), it was held that upon their declaration of the result, the board was *functus officio* and could not be ordered by a *mandamus* to reassemble and recount the vote, the remedy being by a *quo warranto*.

In like manner, in *Gatling* v. *Boone*, 98 N. C., 573, it is held that the declaration of the result of an election by the board of canvassers "conclusively settles *prima facie* the right of the person so ascertained to be elected to be inducted into and exercise the office," leaving the correctness of the result so declared to be investigated upon a *quo warranto*. This seems to be generally well settled. Cooley, Const. Lim., (6th Ed.) 784, and cases cited in note 6, among which the following cases hold that not only a recount can not be ordered by a court, but if the canvassing board voluntarily recount and give a second certificate to another, such action is a mere nullity—*Bowen* v. *Hixon*, 45 Mo., 300 ; *People* v. *Robertson*, 27 Mich., 116 ; Opinion of Justices, 117 Mass.,

599; *State* v. *Donewirth,* 21 Ohio St., 116 ; *Moore* v. *Jones, supra,* does not differ from these. In that case the board of canvassers having without authority of law gone behind the returns, were ordered to assemble and perform the duty allotted to them of adding up the returns and declaring the result  In law, the board has not acted at all.

The clerk having declared the result no longer has any duties in regard thereto, which he could exercise either voluntarily or upon the order of a Judge.  Besides, the clerk did not have the power in the first instance to count the ballots and declare the result, but merely to add up the various precinct returns legally made and ascertain the result.  Section 22 of the Act ; *Moore* v. *Jones, supra.*  In *Broughton* v. *Young,* 119 N. C., 915, it was held that the preservation of the ballots is required that "they may be kept as evidence to verify or correct the election returns when impeached, and that on a *quo warranto* the ballot boxes might be brought into court and the recount made in the presence of court and jury."  But, in that case, being in regard to a contested seat in the General Assembly, inasmuch as the trial was not *viva voce* before that body, but the evidence must be taken before a commission, a recount of the ballots was ordered to be made in the presence of the legislative commission appointed to take evidence, since it could not be contemplated that "the Clerks of Cherokee or Dare or other counties should attend with their ballot boxes before the General Assembly in Raleigh, or before the Congressional Committee on elections at Washington."  This was merely to procure evidence to support or impeach the *prima facie* title of the sitting member, and not for the purpose of authorizing or directing a certificate of election to be issued to the con-.

testant, should a recount show that he had received a majority of votes. The object was solely to procure evidence for the body that was to determine the title, not to compel nor to permit the clerk to reverse the declaration of the result already made or recall the certificate founded thereon.

So much of this proceeding as sought to have a recount made by the Clerk was without authority of law, and a nullity. If made for the purpose of furnishing evidence, it is not justified by the circumstances, as was the case in *Broughton* v. *Young, supra;* since, here the boxes could be opened and the recount readily made in the presence of the jury. And if for the purpose of changing the result already declared by the Clerk, he, already having performed that duty in the mode prescribed by law, was *functus officio.* The law does not contemplate a legal contest over the *prima facie* certificate The officer charged with the duty of issuing the certificate settles that matter at his peril, if he act corruptly, but conclusively so far as its issuance is concerned.

The only remaining question is whether so much of this action can be sustained as seeks to restrain the holding of a new election till the issue raised by the pleadings is determined whether in truth there was a tie vote. If, as formerly (*The Code,* 2699) upon a tie vote, the county commissioners, promptly and without expense, determined the result, there could be no foundation for such proceedings as we have here. Their declaration of the result must be in favor of one party, and the other, if so minded, could by a *quo warranto* have the correctness of the original election determined. But under the present statute we have this anomaly that unless this proceeding lies, neither Cozart nor

Fleming can bring his *quo warranto* until a new election, since Fleming is not in office and Cozart is not in by virtue of this election, but merely holding over till his successor is elected and qualified and no more liable to a *quo warranto* than if some other person had been the former sheriff and was holding over under no claim to the office but merely until the title should be determined between two parties, each of whom claimed the election. Suppose the incumbent holding over were not one of the candidates, and the plaintiff brought an action against him claiming to be elected, the defendant could do the same, and each would have to make his competitor a party, thus eliminating the "hold over" who has no interest in the result; we have the very action here presented.

Besides, in such election, a third person might be elected, and if the result of the November election can only be contested when one of the two highest candidates at such election is actually inducted into office, there might be no chance to contest at all.

From the averments in the pleadings of both competitors it is almost impossible to believe ( especially in view of the recount, though illegally made) that on a vote of so many thousands there will not be discovered an error of one single ballot in favor of one party or the other, either by inadvertence of the election officers, or the erroneous acceptance or rejection of some ballot, or in some other particular. On the face of the numerous averments to that effect specifically made by both the parties, and the truth of which must be determined notwithstanding a new election shall be held, it seems a clear right both to the parties themselves and to the public as well, that the expense of an election shall not be incurred when the chances are almost infinitesimal

that its result will not become a nullity upon the trial of the averments made in these pleadings, averments which would be renewed in a *quo warranto* against the party successful in such new election, since it can have no validity if either party be shown to have been truly elected in the election already held.

It is true that this proceeding is an anomalous one, but it arises upon a condition of things which can very rarely occur. If there is no precedent or statute authorizing it, there is neither precedent nor statute forbidding it. It is one of the occasions when the "reason of the thing" calls upon a court to make a precedent. It is not reasonable that an election should be ordered when both parties make numerous specific averments, the correctness of any one of which on either side (unless exactly balanced by sustaining a similar averment of the other party) will render the new election nugatory.

This proceeding is in its essence a *quo warranto* brought by one contestant against the other, when neither is in actual possession of the office (under the election) by reason of the fact that upon the declaration of a tie vote, which both seek to impeach, neither can be in possession. They have a right to contest the correctness of the result and have it determined, and the Clerk is a proper party. The injunction against his ordering a new election will be continued to the hearing, when the trial of the issues will determine which of the two parties claiming the office was elected ; or if, by a marvel, it should happen that no majority is ascertained on either side, then the restraining order will be dissolved to the end that an election be held, but the re-reference to the ballot box should not be ordered till the plea in bar, set up on each side—that the people at the

Cozart *v.* Fleming.

ballot box have already declared their will—is disposed of. This action, notwithstanding its unusual feature of not being against one in possession of office, is in its every essence an "action to try the title or right to an office," since each party asserts his right to the office to which he claims to have been elected and the action will therefore stand for trial at the first term of Granville Superior Court. *Code,* Sec. 616.

The gist of the action is that the relator was elected and is kept out of office, not by the induction of his competitor, but by an erroneous declaration of a tie vote, which declaration he has a right to contest.

Though for convenience we still speak of an action of *quo warranto* it must be remembered that action has been specifically abolished (*Code,* Sec. 603) and we have in fact only a civil action in which the subject matter is a trial of the title to an office. *Code,* Sec. 616. Usually in such actions there is an allegation that the defendant has usurped and is illegally exercising the duties of the office, but Section 616 does not require such averment, and the facts of this case satisfactorily show why it is not alleged here.

A new election, if there is any truth whatever in the allegations in the pleadings on either side, would damage the parties not only by the expense thereof; (since the expense of the *quo warranto* will still have to be undergone) but the candidate defeated in the new election would be put at a serious disadvantage in satisfying a jury that, at the late election in November, he in truth received a majority, however strong the evidence might be. For these reasons to give the parties an unprejudiced trial to determine the result of the November election, and to save the public and the parties a serious ex-

123—36

pense which will probably prove to have been unneces-
sary the injunction against ordering a new election
should be continued to the hearing.    The injunction in
no wise determines the title, but merely preserves the
*status quo*, till the title can be determined.    *Guillotte*
v. *Poincy,* 5 L. R. A., 403.

In granting such injunction there was no error, but
in other particulars as above pointed out there was

Error.

MONTGOMERY, J., dissenting :   Before the adoption
of The Code of Civil Procedure the writ of *quo warranto*
was the only proper remedy provided by our laws to try
the title to a public office.   Section 362, C. C. P., now
Section 603 of *The Code,* abolished the writ of *quo
warranto.*   But the *form* of the action only has been
abolished.   The remedies obtainable under the old writ
may be obtained by civil actions under the former pro-
visions of Title 15, Chapter 2, Code of Civil Procedure,
now Chapter 1, Title 15, of *The Code. Saunders* v.
*Gatling,* 81 N. C., 298.   It is only under the provisions
of that chapter of *The Code* that the title to a public
office can be tried in this State.   Section 607 of that
Chapter of *The Code* declares that ''An action may be
brought by the Attorney General in the name of the
State upon his own information, or upon the complaint
of any private party, against the parties offending in
the following cases :   (1) When any person shall usurp,
intrude into, or unlawfully hold or exercise any public
office civil or military or any franchise within this State,
or any office in a corporation created by the authority
of this State ; or, (2) When any public officer, civil or
military, shall have done or suffered an act which by

law shall make a forfeiture of his office ; or, (3) When any association or number of persons shall act within this State as a corporation without being duly incorporated."

There is not in my opinion a line written in the laws of North Carolina which authorizes any suit to be brought to try the title to a public office except the above quoted section.   Section 616 as I construe it only declares that actions brought under Section 607, sub-division 1, shall be tried with unusual dispatch, at the next term after summons issued.

It is too clear for argument that upon the face of Section 607 before an action can be brought for an office the defendant claimant must be in possession of the office.

Fleming, the defendant in this action not only has not usurped, intruded into, or unlawfully held or exercised the office of Sheriff of Granville County before this action was commenced, but he never has been declared by any authority competent or incompetent to be entitled to that office.   The Clerk had proclaimed, as it was his duty to do under Section 26 of Chapter 159 of the Laws of 1895, after having tabulated the vote, the result of the vote, to-wit, that there was a tie between the plaintiff and the defendant Fleming for the office of Sheriff. So we have before us an action brought to test the title to an office by a person, who had been held not entitled to it by that officer, the Clerk, whose duty it was to tabulate the vote and announce the result, against that person whom the Clerk had announced as having received a tie vote with the plaintiff, and therefore not entitled to the office.   Under the announcement of the vote of the Clerk, neither one was entitled to the office of Sheriff, and yet we have before us a contest for the

office commenced by regular action before the day fixed
by law for the commencement of the term of the office.
It is perfectly clear that the proceeding was commenced
under the powers which the plaintiff thought that the
election laws of 1895 and 1897 conferred upon the Judges
of the Supreme and the Superior Court over election
officers.    I concur with the Court in the opinion that
the proceeding in the court below by which a recount of
the vote was made by the Clerk through the order of
the Judge was without authority of law; for the reason,
as I believe, that when the Clerk tabulated the vote
and announced the result, his duties as one of the elec-
tion officers for that election ceased.    But I go further
and with due deference to the opinion of the Court I
think this action ought to be dismissed, for it has no
foundation to rest upon, except the supervisory powers
given to the Judges under the election laws, and those
powers do not support it.    It is true that if another
election is ordered, some expense will have to be incur-
red therefor by the county, but that is a matter that
cannot be prevented by judicial determination.    Legis-
lation must cure that.    In the meantime the County
would not be without the services of a person qualified
to act as Sheriff.    The plaintiff was sheriff at the time
of the last election and under the law will serve until
his successor is duly elected and qualified.    If he was
elected at the last election he will succeed himself, what-
ever the result of the new election, if it is held, may be.
If he was not elected, then Fleming the defendant may
show it, if he can, and succeed him in the office.    The
new election will settle nothing, unless it should turn
out in some proper action for the office, between the
plaintiff and defendant, that there was a tie vote ; and
it is unfortunate that another election has to be held.

But the Election Laws make no provision to meet a case like this one ; and proceedings in the nature of *quo warranto*, if this action can be regarded in that light, can not be maintained because the defendant is not in possession of the office, and the action was brought before the term of the office was to begin.

In the opinion of the Court it is stated that unless the present action lies, neither the plaintiff nor the defendant can bring *quo warranto* until the new election is held. I do not take that view of the matter. After the first Monday in December following the election, the date fixed by law for the installation of the person truly elected to the office of sheriff, there was nothing to prevent Fleming, under Section 607 of *The Code*, from instituting proceedings against the plaintiff for the office. It is not necessary, as I see it, that the plaintiff be in possession of the office by the election returns and his installation by the proper authorities, though not truly elected, in order that the defendant may have the right to contest with him the title to the office. If the defendant was in fact elected, the plaintiff is unlawfully holding the office against the defendant, although the law from motives of public policy, that there may be no vacancy in so important an office as that of Sheriff, prescribes that the plaintiff shall hold the office until his successor is duly elected and qualified, from the mere fact that he was Sheriff at the time of the last election. It is not necessary to enable the defendant to commence his action that he should have his certificate of election or the announcement of the tabulated vote in his favor. He can show, if the fact be so, that he received a majority of the votes for the office and that he was entitled to be inducted therein, though another had received the certificate of election and had been inducted into the

office, or notwithstanding that the Clerk had declared the result to be a tie between him and the incumbent.