**IN RE DECLARATORY RULING BY ENVTL. MGMT. COMM'N**

[155 N.C. App. 408 (2002)]

IN RE: REQUEST FOR DECLARATORY RULING BY THE ENVIRONMENTAL MAN-
AGEMENT COMMISSION FILED BY NORTH CAROLINA HOME BUILDERS ASSO-
CIATION, NORTH CAROLINA CITIZENS FOR BUSINESS AND INDUSTRY,
NORTH CAROLINA AGGREGATES ASSOCIATION, NORTH CAROLINA
FARM BUREAU FEDERATION, INC., JAMES H. HOBBS, JR., AND GERALD L.
ANDERSON, PETITIONERS v. ENVIRONMENTAL MANAGEMENT COMMISSION,
RESPONDENT AND THE NORTH CAROLINA CHAPTER OF THE SIERRA CLUB; THE
NORTH CAROLINA COASTAL FEDERATION; THE NORTH CAROLINA ENVI-
RONMENTAL DEFENSE FUND; THE NUESE RIVER FOUNDATION; RICK DOVE
IN HIS CAPACITY AS THE NUESE RIVERKEEPER; DONNA LISENBY IN HER CAPACITY
AS THE CATAWBA RIVERKEEPER; TOM MATTISON IN HIS CAPACITY AS THE NEW
RIVERKEEPER; AND BOUTEN BALDRIDGE IN HIS CAPACITY AS THE CAPE FEAR
RIVERKEEPER, INTERVENORS-RESPONDENTS

No. COA02-99

(Filed 31 December 2002)

**1. Administrative Law—wetland rules—adopted versus pro-
posed rules—republication not required—entry into
Administrative Code**

Wetland rules adopted by the Environmental Management
Commission did not differ substantially from the previously
published proposed rules and thus were not required by N.C.G.S.
§ 150B-21.2(g) to be republished prior to adoption. Furthermore,
entry of the rules into the N.C. Administrative Code constituted
conclusive evidence that the rules were adopted in accordance
with Administrative Procedure Act requirements.

**2. Waters and Adjoining Lands—Environmental Management
Commission—statutory authority to adopt wetland rules**

The Environmental Management Commission (EMC) had
statutory authority to adopt and implement wetlands rules
because (1) wetlands are an "other body or accumulation of
water, whether surface or underground" within the meaning of
N.C.G.S. § 143-212(6), and (2) the EMC's definition of wetlands
was substantially similar to the definition used by the U.S. Army
Corps of Engineers in regulating wetlands pursuant to the federal
Clean Water Act.

Appeal by petitioners from order entered 22 October 2001 by
Judge Donald W. Stephens in Wake County Superior Court. Heard in
the Court of Appeals 18 September 2002.

IN RE DECLARATORY RULING BY ENVTL. MGMT. COMM'N

[155 N.C. App. 408 (2002)]

*Hunton & Williams, by Charles D. Case, Craig A. Bromby, Christopher G. Browning, Jr., and Jason S. Thomas, for petitioners.*

*Attorney General Roy Cooper, by Assistant Attorney General Jill B. Hickey, for respondent.*

*Southern Environmental Law Center, by Donnell Van Noppen, III and Derb S. Carter, Jr., for intervenors-respondents.*

BRYANT, Judge.

On 1 December 1994, respondent Environmental Management Commission (EMC) published notice of proposed regulations affecting North Carolina wetlands in the North Carolina Register. The notice stated that the EMC "intends to amend rules cited as 15A NCAC 2B.0101, .0103, .0201-.0202; 2H.0502-.0504, .0507; adopt 2B.0220; 2H.0501, .0506; and repeal 2B.0109." N.C. Reg., Vol. 9, p. 1348 (December 1, 1994). The text of the proposed regulation was also published along with the notice on 1 December 1994.

On 14 March 1996, the EMC adopted the wetlands rules. The wetlands rules are regulations which classify and designate uses of wetlands in the State and set forth the procedure to be used by the EMC to review water quality certifications issued pursuant to Section 404 of the federal Clean Water Act. *See* N.C.G.S. ch. 143, art. 21 (2001). A definition of wetlands was also included in the regulations. The adopted wetlands rules differed, in part, from the proposed regulations as published. These changes, however, were not published prior to their adoption.

On 18 July 1996 and pursuant to N.C.G.S. § 150B-21.8 to -21.14, the Rules Review Commission (RRC) objected to the adoption of the wetland rules on the basis that the EMC lacked statutory authority to adopt the rules, and that the rules were ambiguous. Thereafter, the EMC decided to file the wetlands rules with the Codifier of the Rules, notwithstanding the RRC's objections. The wetlands rules were thereby given an effective date of 1 October 1996.

**Procedural history**

On 17 August 1999, petitioners filed a petition for declaratory ruling with the EMC pursuant to N.C.G.S. § 150B-4. In said petition, petitioners requested a declaratory ruling that the EMC did not have statutory authority to adopt the wetlands rules, and that the EMC did

not follow procedures for rule-making as specified in the Administrative Procedure Act (APA). The petition was based, in part, upon a ruling by the RRC that the EMC did not have statutory authority to adopt the wetlands rules.

The EMC denied the petition at its 9 September 1999 meeting. Subsequently, by declaratory ruling issued on 4 October 1999, the EMC found that it had statutory authority to adopt the wetlands rules, and that the wetlands rules were adopted in compliance with the requirements of the APA. Petitioners filed a petition for judicial review of the EMC's declaratory ruling.

The petition for judicial review came for hearing at the 6 August 2001 session of Wake County Superior Court with the Honorable Donald W. Stephens presiding. By order filed 22 October 2001, the superior court affirmed the EMC's declaratory ruling and dismissed the petition for judicial review. Petitioners filed its notice of appeal to this Court on 20 November 2001.

### Standard of review

Petitioners contend that the superior court made erroneous interpretations of law; therefore, *de novo* review must be applied. *See In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) ("If appellant argues the agency's decision was based on an error of law, then '*de novo*' review is required.") (citation omitted); *Newsome v. N.C. State Bd. of Elections*, 105 N.C. App. 499, 415 S.E.2d 201 (1992).

### I.

[1] First, petitioners argue that the superior court erred in determining that the EMC complied with requirements of the APA in adopting the wetlands rules. Specifically, petitioners argue that 15A N.C. Admin. Code 2B .0103(c), 15 N.C. Admin. Code 2H .0506(h)(3), and 15 N.C. Admin. Code 2H .0506(h)(7), were not adopted in compliance with certain APA procedural requirements. Namely that the wetlands rules as adopted differ substantially from the proposed rules as previously published and therefore were required to be republished prior to their adoption. We disagree.

Pursuant to N.C.G.S. § 150B-21.2, procedure for adopting a permanent rule, a rule-making agency must republish a rule it intends to adopt if the text of the rule "differs substantially from the text of a proposed rule published in the North Carolina Register." N.C.G.S. § 150B-21.2(g) (2001). According to N.C.G.S. § 150B-21.2(g):

**IN RE DECLARATORY RULING BY ENVTL. MGMT. COMM'N**

[155 N.C. App. 408 (2002)]

An adopted rule differs substantially from a proposed rule if it does one or more of the following:

(1) Affects the interests of persons who, based on either the notice of rule-making proceedings or the proposed text of the rule published in the North Carolina Register, could not reasonably have determined that the rule would affect their interests.

(2) Addresses a subject matter or an issue that is not addressed in the proposed text of the rule.

(3) Produces an effect that could not reasonably have been expected based on the proposed text of the rule.

The RRC is required to notify the rule-making agency if the Commission determines that any of the agency's rules were not adopted in compliance with APA requirements. In addition, the RRC is required to notify the Codifier of the Rules of any objections it has concerning adoption of the proposed rules. *See* N.C.G.S. § 150B-21.12(d) (2001).

N.C.G.S. § 150B-21.9(a) (2001), provides the standards for RRC review of a proposed rule as follows:

(a) Standards.—The Commission must determine whether a rule meets all of the following criteria:

(1) It is within the authority delegated to the agency by the General Assembly.

(2) It is clear and unambiguous.

(3) It is reasonably necessary to fulfill a duty delegated to the agency by the General Assembly. . . .

The Commission may determine if a rule submitted to it was adopted in accordance with Part 2 of this Article. . . .

The Commission must notify the agency that adopted the rule if it determines that a rule was not adopted in accordance with Part 2 of this Article and must return the rule to the agency. *Entry of a rule in the North Carolina Administrative Code after review by the Commission is conclusive evidence that the rule was adopted in accordance with Part 2 of this Article.*

N.C.G.S. § 150B-21.9(a) (2001) (emphasis added).

In the instant case, the RRC did not object to adoption of the wetlands rules because of procedural flaws in their adoption. Moreover and unlike petitioners' assertion on appeal, the RRC did not object to the rules on the basis that the adopted rules differed substantially from the proposed rules. Rather, the RRC only objected based on the EMC's alleged lack of statutory authority to adopt said rules.[1] N.C.G.S. § 150B-21.9(a), clearly states that "Entry of a rule in the North Carolina Administrative Code after review by the Commission is conclusive evidence that the rule was adopted in accordance with Part 2 of this Article." The rules in dispute were entered in the North Carolina Administrative Code; and therefore, conclusive evidence exists that the rules were adopted in accordance with APA requirements. *See also* N.C.G.S. § 150B-21.12 (setting out procedure for entry of rule in North Carolina Administrative Code despite objection of RRC). Moreover, our review of the record indicates that the challenged rules, as adopted by the EMC, do not differ substantially within the meaning of N.C.G.S. § 150B-21.2(g) from the proposed text of the rules as published in the North Carolina Register on 1 December 1994. Therefore, this assignment of error is overruled.

## II.

**[2]** Second, petitioners argue that the superior court erred in determining that the EMC had statutory authority to enact the wetlands rules. Petitioners assert that the EMC's statutory authority to regulate water quality does not include wetlands. We disagree.

N.C.G.S. § 143-211(a) states:

It is hereby declared to be the public policy of this State to provide for the conservation of its water and air resources. Furthermore, it is the intent of the General Assembly, within the context of this Article and Articles 21A and 21B of this Chapter, to achieve and to maintain for the citizens of the State a total environment of superior quality.

N.C.G.S § 143-211(a) (2001).

N.C.G.S. § 143-211(c) states:

Standards of water and air purity shall be designed to protect human health, to prevent injury to plant and animal life, to prevent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage the expansion of employment opportunities, to provide a

---

1. The issue of the EMC's statutory authority is addressed in Section II.

permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

N.C.G.S. § 143-211(c) (2001).

N.C.G.S. § 143-214.1(a)(1) authorizes the EMC to develop and adopt water quality standards for "each of the waters of the State in such a way as to promote the policy and purposes of this Article most effectively." N.C.G.S. § 143-214.1(a)(1) (2001). Moreover, N.C.G.S. § 143-214.1(a)(2) empowers the EMC "to separately identify all such waters as the Commission believes ought to be classified separately in order to promote the policy and purposes of this Article." N.C.G.S. § 143-214.1(a)(2) (2001).

Article 21, Chapter 143 of the North Carolina General Statutes defines waters as,

> any stream, river, brook, swamp, lake, sound, tidal estuary, bay, creek, reservoir, waterway, or *other body or accumulation of water, whether surface or underground,* public or private, or natural or artificial, that is contained in, flows through, or borders upon any portion of this State, including any portion of the Atlantic Ocean over which the State has jurisdiction.

N.C.G.S. § 143-212(6) (2001) (emphasis added).

The EMC defines wetlands in the wetlands rules as follows:

> Wetlands are "waters" as defined by G.S. 143-212(6) and are areas that are inundated or saturated by an accumulation of surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas. Wetlands classified as waters of the state are restricted to waters of the Unites States as defined by 33 CFR 328.3 and 40 CFR 230.3.

15A NCAC 2B.0202(71) (2002).

Petitioners argue that the definition of water specified in N.C.G.S. § 143-212(6) does not include the classification of wetlands; therefore, the EMC does not have statutory authority to implement the wetlands rules. We disagree.

In evaluating the scope of an agency's authority, our courts are to examine the scope of authority our legislators intended to grant to the agency. This evaluation should be based upon " 'the language

of the statute, the spirit of that act, and what the act seeks to accomplish.' " *Comm'r of Insurance v. Rate Bureau,* 300 N.C. 381, 399, 269 S.E.2d 547, 561 (1980) (citation omitted).

First, the definition of water provided in N.C.G.S. § 143-212(6) is very flexible, and encompasses a catchall provision for "other body or accumulation of water, whether surface or underground." Although the term wetland is not specifically used in the statutory definition of water, arguably wetlands would be included in the catchall provision. *See* COMMITTEE ON CHARACTERIZATION OF WETLANDS, ET AL., WETLANDS: CHARACTERISTICS AND BOUNDARIES 43 (1995) ("The term 'wetland' was not commonly used in the American vernacular until quite recently. It appears to have been adopted as a euphemistic substitute for the term 'swamp.' ") (citation omitted).

Second, the EMC's definition of wetlands is substantially similar to the definition of wetlands as used by United States Army Corps of Engineers. Section 328.1 of 33 CFR, states: "This section defines the term 'waters of the United States' as it applies to the jurisdictional limits of the authority of the Corps of Engineers under the Clean Water Act." 33 CFR § 328.1 (2002). Wetlands is defined in 33 CFR § 328.3(b) and 40 CFR § 230.3(t) as "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas." 33 CFR § 328.3(b) (2002); 40 CFR § 230.3(t) (2002).

The Corps of Engineers has regulated wetlands pursuant to the federal Clean Water Act for more than twenty-five years. Pursuant to Section 404 of the Clean Water Act, the Corps of Engineers has authority to issue regulations relating to the deposit of dredged materials into navigable waters of the United States. 33 U.S.C.A. § 1344 (2001). Currently, the Corps of Engineers regulates the deposit of dredged material into wetlands areas, as wetlands is defined pursuant to 33 CFR § 328.3(b), and 40 CFR § 230.3(t). Permits issued by the Corps of Engineers, as relates to the deposit of dredged materials into wetlands, are commonly referred to as "404 Permits."

Prior to issuing a 404 Permit, the Corps of Engineers must obtain certification from the affected State that the issuance of the 404 Permit will not violate the water quality standards of the State. In North Carolina, such certification is obtained through the EMC.

In the instant case, the definition of water provided in N.C.G.S. § 143-212(6) is sufficiently broad to include the classification of wetlands. The absence of the term wetlands in the definition does not deprive the EMC of statutory authority to classify waters and to adopt standards for wetlands. This assignment of error is overruled, and the order of the superior court is affirmed.

AFFIRMED.

Judges McCULLOUGH and THOMAS concur.