## Maxman's Nomination Petition

*Maurice H. Brown,* for petitioner.
*Marshall H. Morgan,* for candidate.
*William T. Connor,* for county commissioners.

CARROLL, J., August 14, 1943.—The questions in this case arise out of a petition filed by a qualified elector of the Fourth Councilmanic District of the City of Philadelphia to strike off the nomination petition of George Maxman as a Republican candidate for the office of councilman from that district. The petition is filed under section 977 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended by the Act of May 21, 1943, P. L. 353, 25 PS §2937. To this petition no answer has been filed and the questions are before the court after hearing. The person against whom the petition was filed and the County Commissioners of the County of Philadelphia appeared by counsel. The only evidence offered was certain unanswered paragraphs in the petition, to some of which objection was made by counsel for respondent. The basic undisputed facts are:

1. That George Maxman is a commissioned officer holding the rank of captain in the Army of the United States; and

2. That a petition to place his name on the Republican ballot as a candidate for the nomination of councilman from the Fourth Councilmanic District of Philadelphia has been filed with the county board of elections (county commissioners).

The questions raised are:

1. Should the nomination petition filed by George Maxman be set aside and his name be stricken from the list of candidates for the Republican nomination to the office of councilman in the Fourth Councilmanic District by reason of the disqualification alleged?

2. Is the disqualification alleged—the fact that he was at the time of the filing of the petition a commissioned officer in the Army of the United States on active duty—such a disqualification as would bar him from being a candidate for municipal office under the Constitution and laws of the Commonwealth of Pennsylvania?

3. Is George Maxman disqualified as a candidate for the office of councilman in the City of Philadelphia by reason of the fact that he, as an officer in the Army of the United States, is subject to the provisions of Army regulations which provide that no member of the military forces on active duty will become a candidate for or seek or accept reëlection to public office held by him when he entered upon active duty?

4. Does the Hatch Political Activity Act of August 2, 1939, sec. 9, 53 Stat. at L. 1147, as amended, 18 U. S. C. §61h, disqualify an officer in the Army of the United States on active duty from being a candidate for municipal office?

Before any of these questions may be considered by the court, there first must be determined the jurisdiction of the court to entertain this petition, filed under the provisions of section 977 of the Pennsylvania Election Code of 1937, as amended, supra, providing as follows:

"All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper

was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over any other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers. If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside."

We are mindful that our jurisdiction is strictly limited by the language of the act of assembly, which provides the following jurisdictional grounds:

1. If the nomination petition contains such defects as are set forth in section 976, 25 PS §2936.

2. If it does not contain the number of qualified electors prescribed by law.

3. If it was not filed by persons entitled to file it.

As to the defects constituting the first ground referred to in section 977, there is nothing in section 976, as amended by the Act of July 28, 1941, P. L. 526, which confers jurisdiction under the facts of this case. The grounds of jurisdiction under section 976 are as follows:

"No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—(a) it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or (b) it contains material alterations made after signing without the consent of the signers; or (c) it does not contain a sufficient number of genuine signatures as required by law; or (d) in the case of nomination petitions, if nomination petitions have been filed for printing the name of the same person for the same office, except the office of judge of a court of record, upon the official ballot of more than one political party; or (e) in the case of nomination papers, if the candidate named therein has filed a nomination petition for the same office for the ensuing primary, or has been nominated for the same office by nomination papers previously filed; or (f) if the nomination petitions or papers are not accompanied by the filing fee or certified check required for said office; or (g) in the case of nomination papers, the appellation set forth therein is identical with or deceptively similar to the words used by any existing party or by any political body which has already filed nomination papers for the same office, or if the appellation set forth therein contains part of the name, or an abbreviation of the name or part of the name of an existing political party, or of a political body which has already filed nomination papers for the same office." *

The second ground of jurisdiction is where the nomination petition does not contain the number of qualified electors prescribed by law. (This ground appears in

---

* An additional ground is contained in the amendment to the Act of July 28, 1941, P. L. 526, sec. 2, 25 PS §2936, prohibiting the nomination petition from being filed if the political party or political body referred to shall be composed of a group of electors whose purposes or aims are the seizure or overthrow of the Government of the Commonwealth of Pennsylvania or of the United States of America.

both sections 976 and 977.) Jurisdiction on this ground is not claimed by petitioner.

As to the third ground, if the nomination petition was filed by "persons not entitled to file the same", here petitioner does not contend that the nomination petition was filed by persons not entitled to file it but takes the position that Maxman is not a "person" entitled to file the same and that, therefore, he is barred by this language of section 977.

In considering this question, the first matter to determine is whom the legislature had in mind when it employed the word "persons" in that sentence of the act referred to and relied on by petitioner. Does it mean the candidate or does it mean the persons filing the nomination petition who, of course, are persons other than the candidate? As it stands with relation to the full context of the sentence, it may appear somewhat ambiguous. Petitioner reasons that it refers to the candidate himself and that he is not such proper person contemplated by the act. We cannot accept his interpretation and, therefore, the conclusion based on such interpretation, for the word is clearly written in the plural. This must be meant to refer to petitioners. Each nomination petition must have a requisite number of petitioners (plural) who make request to place the name of but one person (singular) on the ballot. We hold that these words of the act refer to the petitioners and not to the proposed candidate and, therefore, we are not required under this language of the act to inquire into the qualifications of Maxman as one ("persons") entitled to file the same.

It seems clear to us that the act never intended to give to a court, in equity or otherwise, jurisdiction to inquire into the qualifications of a candidate. It contains no direct language on this point and no other language which could be construed to such effect. If, by a tenuous interpretation of these words of the act, they were

held to apply to the candidate as well as to the petitioners and we were required to determine whether Maxman was a person entitled to file in view of his alleged disqualifications, then we would be obliged to say that such alleged disqualifications would not warrant the court to act as requested by petitioner, as it is apparent that they may be removed before his nomination, election, or induction into office.

Inasmuch as there is no challenge that those who filed for Maxman are "persons not entitled to file" and they have been accepted by the county commissioners as proper persons, there remains no basis on which we are empowered to assume jurisdiction. We cannot supplement the act of assembly with an additional ground for jurisdiction.

"The power of the court is limited to the determination of objections which come within the purview of statutory authorization . . .": 29 C. J. S. 217, sec. 148(b), citing the Pennsylvania case of Beaver's Petition, 29 Dist. R. 245. The limited jurisdiction of the courts of common pleas in dealing with petitions to set aside nomination petitions is part of the basic law of Pennsylvania, and hence the question presented by this petition is by no means a novel one. Likewise it is not novel to this court. In Nicholson et al. v. Earle et al., 20 Dist. R. 781 (1911), a bill was presented in this court to restrain the county commissioners from printing the name of George H. Earle, Jr., on the ballot as a candidate for the office of mayor. The ground upon which the petition in such case was based was that the candidate, Earle, could not hold office if elected by reason of the fact that he was ineligible therefor. In that case, President Judge Sulzberger stated at pages 781 and 782, Associate Judges Wiltbank and Barrett concurring:

"Neither the constitution nor the general equity act confers upon the courts of this commonwealth the power of directing, superintending or controlling the

action of the electors in voting for candidates. If we possess any power in the premises, it must be derived from the series of acts constituting the primary election law. A careful examination of these shows that the only jurisdiction in any wise conferred upon the courts is to consider objections to nomination papers when duly filed, and the character of the objections so to be considered by the court is limited to averments that a nomination paper filed was filed by parties not entitled, or that, being filed by parties entitled, it has some defects of form which the court may correct.

"It is obvious that these provisions are totally inadequate to enable us to exercise the power invoked.

"The primary election laws were enacted for a definite purpose. They were intended to enlarge the powers of electors in making nominations beyond those which they exercised before. There was no thought of interfering with the freedom of the electors as to the persons whom they were to choose. On the contrary, the object of the act was to give electors greater freedom."

In Abbott's Nomination, 1 D. & C. 600 (1922), an application was made to set aside a nomination paper on the ground that Abbott held an office as deputy revenue collector under the United States and was, therefore, ineligible to be a candidate for another office because of the Act of June 27, 1895, P. L. 403, which provided that "no person holding office under the United States shall be eligible to the office of county controller during his continuance in office as aforesaid, nor until one year thereafter . . ." President Judge Fuller, of Luzerne County, held (p. 601) :

"This proceeding is purely statutory, and our power to set aside a nomination paper is severely restricted to explicit statutory grounds . . ."

In Wilner v. Lewis, etc., et al., 33 Dauph. 35 (1929), where in an equity proceeding it was sought to restrain the Secretary of the Commonwealth from printing the

name of a person on a ballot because of an alleged disqualification, it was held that there was no general equity jurisdiction to prevent the filing of a nomination petition by an ineligible person, the court stating, at pages 42 and 43:

"If therefore one has a disqualification which renders him incapable of holding a particular office of trust or profit in this Commonwealth he has the right until he is elected or sworn, as the case may be, into the office to have the disability removed. It may fairly be deduced from this opinion that one being incapable to hold an office at the time of a primary election, be a candidate for the office, if the removal of the incapacity or disability is procured before election or before he is sworn in, as the case may be, he may hold the office. If that is so, then it would be inequitable for a court of equity to interfere with his candidacy on the ground of his incapacity."

In discussing the merits of the controversy, petitioner contends that Maxman is disqualified as a candidate because of article XII, sec. 2, of the Constitution of Pennsylvania, which provides:

"No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached. The General Assembly may by law declare what offices are incompatible."

There is no merit in such contention for the reason that the term of office which Maxman seeks does not come into being until the first Monday in January of 1944, and so far as Maxman himself is concerned, until he has been duly elected, qualified, and inducted into such office, such alleged constitutional disqualification is nonexistent.

In 29 C. J. S. 201, §130, there is this statement of law:

"A statute or constitutional provision prohibiting one person from filling two offices at one time does not preclude a candidate from seeking nomination for more than one office", citing State ex rel. Neu v. Waechter et al., 332 Mo. 574, 58 S. W. (2d) 971, which holds (p. 579) :

"There is absolutely nothing in Section 10441 justifying respondents' contention that a candidate cannot seek nomination for *more than one office* on the same party ticket. Neither will Section 18, Article IX of the State Constitution bear that construction. It provides 'no person shall, at the same time, *fill* two municipal offices' . . . ; but it does not say a person shall be *ineligible* for nomination to more than one office."

Finally, petitioner strongly advances the argument that the obligation imposed upon Maxman by Army regulations and by the act of Congress known as the Hatch Political Activity Act, supra, effectively disqualifies him as a candidate. This argument is untenable. That part of the Army regulations referred to has to do with "military discipline" and the mandates or regulations therein contained affect Maxman in the discharge of his prescribed duties only as an officer of the Army. The Hatch Act likewise has no application for the reason that by its provisions it is primarily directed not at the eligibility of persons to become candidates for public office, but to political activity on the part of persons in public office under the United States (some offices are specifically excepted under the act). It has been urged upon us that if there is no authority under the Pennsylvania Election Code to dismiss the nomination petition we are required to take judicial notice of the Hatch Political Activity Act and extend our general equity jurisdiction to restrain petitioner from filing on the ground that by so doing he becomes a violator of this Federal penal statute. Under our equity jurisdiction we do not have power to re-

strain the commission of an act penal in nature or one which is prohibited by penal law.

However, for reasons more compelling we conclude that neither the Hatch Political Activity Act nor Army regulations have any applicability to the question before us. The matter of the nomination and election of officials of the State or any political subdivision thereof is something which concerns the sovereignty of this Commonwealth in a sphere in which it is supreme. No act of Congress or regulation promulgated under an act of Congress by a bureau of government, an administrative board, or otherwise, can interfere with the historic and fundamental right of a sovereign State solely and exclusively to determine the qualification of its citizens to be candidates for public office. The tenth amendment to the Constitution of the United States provides as follows:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

In Commonwealth v. First National Bank & Trust Company of Easton, 303 Pa. 241 (1931), at page 246, Justice (now Chief Justice) Maxey, speaking for the Supreme Court of Pennsylvania, said:

"The respective supremacies of the state and national government in their respective spheres of sovereignty have been meticulously observed by the nation and each individual state. Within their individual spheres they are as sovereign as if they were two independent foreign states. There are many governmental activities in respect to which the federal government is not the states' superior or sovereign."

Counsel for petitioner has not referred us to any authority wherein any court in the United States has ever held that Congress could regulate or prescribe the qualifications of a citizen of a State for State or municipal office.

In accordance with these conclusions, the petition herein is dismissed at the costs of petitioner.