STATE EX REL. JOHN NEU, JR., Relator, v. JAMES A. WAECHTER, JOSEPH HANNAUER, STEPHEN WAGNER and CHARLES MOORE, constituting the Board of Election Commissioners of the City of St. Louis.—58 S. W. (2d) 971.

Court en Banc, March 21, 1933.

*T. J. Rowe* and *Henry Rowe* for relator.

*James T. Blair, Jr.,* for respondents.

ELLISON, J.—On March 1, 1933, the relator, John Neu, Jr., filed in this court his petition for an original writ of mandamus re-quiring the Board of Election Commissioners of the city of St. Louis to print his name on the official ballot as a candidate for nomination for mayor on the Republican ticket, at the primary election to be held on March 10, 1933, under Section 10445, Revised Statutes 1929. The respondent election commissioners on the same day filed a general demurrer to the petition and both parties joined in a stipulation reciting that "in view of the exigency of the matter involved . . . the said cause may be submitted upon relator's petition and respondents' demurrer thereto and judgment therein rendered immediately." The issuance of an alternative writ was thereby waived and the petition taken as and for the writ.

No suggestions in opposition to the granting of the writ were filed by respondents. Those submitted by relator in support of his petition were brief and obviously hurriedly written. On this meager showing and without the aid of oral argument this court was called upon to determine finally the issues presented. This the court did with some reluctance on March 2, solely because the rights of the parties could not be adjudicated in regular course, owing to the nearness of the election, the necessity of giving the statutory notice thereof, the printing of the ballots, etc. A peremptory writ of mandamus was awarded. This opinion sets out the reasons for that action.

Omitting reference to formal recitals, the petition alleges that on February 27, 1933, being the last day allowed by law therefor, the relator filed his declaration of his candidacy (form set out) with the respondent Board of Election Commissioners, which said declaration the respondents received and retained; but that they officially refused to recognize and treat said filing as valid on the ground that relator had failed to produce and file along with said declaration, the receipt of the treasurer of the Republican City Central Committee showing he had paid his filing fee as a candidate (under Sec. 10439, R. S. 1929).

It is further recited that thereafter, on the same day, the relator tendered to the treasurer of said central committee the sum of $200, being two per cent of one year's salary of the office of mayor, (the amount fixed by said Sec. 10439) for the purpose of paying said filing fee and obtaining said treasurer's receipt to file with the respondent Board of Election Commissioners. The petition next charges said treasurer refused to accept said filing fee and to issue said receipt; that on the following day, February 28, relator again presented himself at the office of said Republican City Central Committee for the purpose of making a like tender, but was unable to find said treasurer thereat; that he thereupon made said tender to

the chairman of said city committee who was in charge.of said office, as the agent of said treasurer, but that said chairman refused to accept said tender and issue said receipt.

Following this, says the petition, on the same day the relator again demanded of the respondents that they print his name on the official ballot for said primary election as a candidate for the nomination for mayor on the Republican ticket; but said election commissioners again refused, and will continue in that refusal unless otherwise ordered by this court. It alleged said action of the respondent Board of Election Commissioners is wrongful and contrary to the ruling of this court in State ex rel. Haller v. Arnold, 277 Mo. 474, :210 S. W. 374.

On this point the petition continues as follows: "Relator further avers that it was also held in said case that if, as claimed and contended for by respondents, Section 10439, Revised Statutes 1929, requires relator to pay said filing fee before filing his declaration of candidacy then said section is unconstitutional and void as being in conflict with Section 9, Article 2 of the State Constitution providing that 'All elections shall be free and open;' and relator hereby again expressly raises this constitutional question and asks the court to determine the same in considering this petition."

The petition further recites that sometime before filing the foregoing declaration of his candidacy for the Republican nomination for mayor the relator had duly filed as a candidate for nomination as alderman in his ward on the Republican ticket, paid the required filing fee and deposited the receipt of the treasurer of the Republican City Central Committee therefor with the respondent Board of Election Commissioners; but that previous to filing for mayor, and more than ten days in advance of the primary election, he filed a withdrawal of his said declaration of candidacy for alderman.

It is alleged that the respondent election board, as a second reason for refusing to recognize his candidacy for mayor, officially contend and rule Section 10441, Revised Statutes 1929, forbade the withdrawal of his candidacy for alderman and requires the printing of his name on the primary ballot as a candidate for that office; and further prohibits his candidacy for nomination to more than one office on the same ticket. In other words, it is respondents' position that relator can run for only one office on the same (Republican) ticket, and since he has already filed for alderman and cannot withdraw, therefore he cannot run for mayor.

As to this second objection relator asserts the statute aforesaid does not preclude the filing of declarations of candidacy for more than one office on the same ticket, but only the filing of declarations by one person on more than one ticket, as, for instance, on both the Republican and Democratic tickets. Relator alleges the point was so

decided in State ex rel. Dunn v. Coburn, 260 Mo. 177, 168 S. W. 956; and adds, the construction contended for by respondents renders the statute doubtful and uncertain in meaning, in which situation Section 10437, Revised Statutes 1929, makes applicable the general election and registration laws, and the customs, practices, usages and forms thereunder, all of which are contrary to respondents' view and contention.

The petition then continues: "Relator further avers that the said provisions of said Section 10441, Revised Statutes 1929, in terms prohibiting the withdrawal of declaration papers in all cases and arbitrarily directing that the names of all declarants on all declaration papers filed with said Board be printed. on the official ballot is unconstitutional and void as being in conflict with Section 9, Article 2 of the Constitution of Missouri providing that 'all elections shall be free and open;' and relator hereby expressly raises this Constitutional question and asks the court to determine the same in considering this petition."

I. On the merits of the controversy the law of this case is clearly with the relator. Looking to respondents' first contention, that relator is not entitled to have his name printed on the official primary ballot as a candidate for the Republican nomination for mayor because he failed to file with the declaration of his candidacy a receipt from the treasurer of the Republican City Central Committee showing he had paid the statutory filing fee. Section 10439, Revised Statutes 1929, does in terms make such a requirement. But, as relator pleads, this court en banc in State ex rel. Haller v. Arnold, supra, 277 Mo. 1. c. 480, 210 S. W. 1. c. 375, squarely passed upon that question, in considering what is now Section 10440, Revised Statutes 1929, a companion section dealing with "nonpartisan candidates." It was held contemporaneous presentation of a filing fee receipt is not necessary, at least where the candidate is not at fault, and that any other construction of the statute would be violative of the constitutional guarantee that "all elections shall be free and open." [Sec. 9, Art. II, Const. of Mo.] Speaking to that point the clear language of the opinion, by FARIS, J., is as follows:

"The sole question at issue may be stated in yet a narrower compass. That question is: Does Section 6015 of the act supra, above quoted, absolutely require as a condition precedent to the placing by the Board of Election Commissioners of the name of a proposed nonpartisan candidate on the official ballot, that the receipt of the City Treasurer for the deposit of the sum of sixty dollars shall be filed *along with and contemporaneously* with the certificate of nomination of such proposed candidate?

"We have concluded that it does not. The affirmative of the question stated and presented by the facts here at issue would in our

opinion and in the light of the language of the above section be too narrow a view to take of the meaning of that section. Such a view would inevitably restrict and circumscribe the right of a citizen to be a candidate for office within such limits and hedge the privilege about with such conditions as materially to impinge upon the guarantee of the Constitution that 'all elections shall be free and open.' ''

This Haller case, decided in 1918, has not been questioned or criticized in any subsequent decision of this court. We are at a loss to understand why the Board of Election Commissioners failed to follow it (if they did so refuse, as their demurrer admits) unless, possibly, on this ground. The opinion comments on the fact that Section 10440 merely requires the receipt to be filed ''with'' the declaration and omits any qualifying words importing simultaneity of filing. On the other hand, Section 10439, which is under construction in the instant case does contain such words. It says the receipt shall be filed ''with and at the time he files his declaration papers.'' So the language of Section 10439 lends more color to respondents' contention than would Section 10440. Nevertheless, the ruling in the Haller case is controlling. It holds the statute would be unconstitutional if it required simultaneous filing of the receipt and declaration in all circumstances. Furthermore, independent of the constitutional question, such a construction would be harsh and unreasonable.

Likewise, the facts in the two cases are sufficiently similar to make the Haller decision authority here. In that case, as in this, on the last day allowed by law the complaining candidate filed his declaration with the Board of Election Commissioners and attempted to pay his filing fee to the treasurer of the city committee and obtain a receipt. In the Haller case he was unable to find the treasurer in his office; in this case the treasurer refused to receive the filing fee. In both cases on the next day the declarant again attempted to pay his filing fee and renewed his demand to be recognized as a candidate. In the Haller case he found the treasurer but the latter refused to accept the filing fee; in this case relator was unable to locate the treasurer the second time. All this makes the facts practically identical. On them, in the Haller case this court ruled the candidate had a right to pay the fee and obtain his receipt at the earliest possible time—provided the receipt be deposited with the Board of Election Commissioners in time to permit the performance of all the ensuing duties incumbent upon the board by law. We so rule in this case.

■ ■ II. The other reason assigned by the respondent election commissioners is that under the provisions of Section 10441, Revised Statutes 1929, the relator could not become a candidate for the Re-

publican nomination for mayor because he had previously filed as a candidate for alderman and could not withdraw, and furthermore could'not run for two places on the same ticket. This calls for a construction of the statute, which is as follows:

(1) ''No person shall file more than one written declaration indicating the party designation under which his name is to be printed on the official ballot, (2) and it shall be unlawful for his name to appear on more than one ballot at said primary election, (3) and all declaration papers shall be filed with the board of election commissioners of such city, and such declaration papers shall not be withdrawn, (4) but the names of candidates who so declare shall be printed on the official primary ballot.''

For convenience in reference we have divided the section into four parts by the insertion of numbers in parentheses. The first provision is that ''no person shall file more than one written declaration *indicating the party designation under which his name is to be printed on the official ballot.''* The second provision is that ''it shall be unlawful for his name to appear *on more than one ballot* at said primary election.'' (All italics ours.) Turning to Sections 10448 and 10449, we find the law requires each declarant to specify in his declaration the party upon whose ticket he proposes to run; and further requires the names of all candidates to be grouped by the election board under their respective party designations, one form of ballot being provided for each political party, or group, as defined in another section, Section 10438. Considering all these statutes together it is obvious that the first two parts of the quoted Section 10441 mean no more than they plainly say: namely, that a candidate cannot file or stand for nomination on more than one party ticket at the same election. The first provision of said Section 10441 is identically the same as the opening language of Section 5862, Revised Statutes 1909, now Section 10260, Revised Statutes 1929, in the general primary law, and the latter section was so construed nearly twenty years ago in State ex rel. Dunn v. Coburn, supra, 260 Mo. 177, 168 S. W. 956, cited by relator in his petition.

There is absolutely nothing in Section 10441 justifying respondents' contention that a candidate cannot seek nomination for *more than one office* on the same party ticket. Neither will Section 18, Article IX of the State Constitution bear that construction. It provides ''no person shall, at the same time, *fill* two municipal offices'' (italics ours); but it does not say a person shall be *ineligible* for nomination to more than one office. [See State ex rel. McAllister v. Dunn, 277 Mo. 38, 209 S. W. 110, and 46 C. J. sec. 55, p. 947.] There is, however, a section in the general primary law, Section 10244, Revised Statutes 1929, which squarely provides ''no person

shall accept a nomination to nor be published as a candidate for more than one office." We shall not attempt to decide whether this statute applies to declarants who file under Article 13 of Chapter 61, Revised Statutes 1929 (applicable to primary elections in cities having over 400,000 inhabitants), which includes the sections involved in this case, nor shall we go into the question whether the later filing had the legal effect of vacating the earlier, for two reasons: first, because Section 10244 is not cited by the parties or invoked by the respondents; and second, because the relator actually filed with the board a *withdrawal* of his candidacy for alderman and maintains he is a candidate only for nomination for mayor. If this action on his part was valid and effectual, it disposes of the whole matter.

■ The board contends he could not withdraw in view of the last two provisions of Section 10441 which are that "all declaration papers shall be filed with the board of election commissioners of such city, and such declaration papers shall not be withdrawn;" and that "the names of candidates who so declare shall be printed on the official primary ballot." It will be observed the statute merely says such declaration *papers* shall not be withdrawn; it does not say 'the declarant cannot abandon his candidacy. It then goes on to provide the names of candidates who so *declare* shall be printed on the official primary ballot.

In our opinion a construction of this statute which would make it mean that a candidacy once declared by the filing of papers can never be recalled, and that the name of the candidate must be printed on the ballot, is so violent and unreasonable that it ought not to be adopted if any other construction is possible. It would mean the names of deceased declarants, those who had moved out of the city or State and admittedly become ineligible, or those who would refuse to continue in the race if nominated, nevertheless must be voted upon by the people. And in cases where a deceased or ineligible declarant received the highest number of votes it would nullify the whole primary election. [46 C. J. sec. 267, p. 207; Sheridan v. St. Louis, 183 Mo. 25, 81 S. W. 1082, 2 Ann. Cas. 480.]

Such a construction also is contrary to the practice prescribed and followed under the general primary law. Section 10245, Revised Statutes 1929, recognizes there may be a "vacancy" in a nomination "by resignation, death or otherwise." Sections 10246 and 10268 provide for filling "vacancies on a ticket previously nominated" and those "occurring after the holding of any primary or where no person shall offer himself as a candidate before such primary." Section 10251 expressly provides the secretary of state and county clerks shall not certify and publish, respectively, the names of declarants who shall notify them in writing, etc., that they will not accept

nomination to the offices for which they have been certified. In other words, the general primary law by the section last cited in terms authorizes the withdrawal of primary candidacies. Section 10437, the opening section of Article 13, Chapter 61, Revised Statutes 1929, here under consideration, provides that whenever the provisions of the article are ambiguous or lacking in explicitness, the general election laws, customs, practice, usage and forms shall be followed. Section 10470 says the law shall be liberally construed.

Respondents' construction of Section 10441 cannot be upheld. When it says declaration *papers* cannot be withdrawn it means just that and nothing more. There are provisions somewhat similar in the general primary law. Section 10243 requires certificates of nomination filed in the offices of the secretary of state and county clerks to be "preserved;" and Section 10252 makes it a felony, among other things, fraudulently to destroy or suppress any such certificates. And when the statute. Section 10441, provides the names of candidates "who so declare" shall be printed on the official primary ballot, it is equivalent to saying the names of those who do not so declare shall not be printed. The very purpose of the law would be defeated if the statute were held to mean the name of every declarant *must* be published as a candidate regardless of intervening eventualities such as death, withdrawal, etc.

III. The question of greatest concern when the peremptory writ of mandamus was issued on March 2 was whether we should entertain the proceeding or deny the relator's petition under Rule 32, leaving him free to file a like application in some court having concurrent jurisdiction. On further study of the petition, however. we are confirmed in the conclusion that it sufficiently raises one and perhaps two constitutional questions. Of these this court alone has jurisdiction, under Section 12, Article VI of the State Constitution. It follows, therefore, that our writ was properly issued so far as any jurisdictional question is concerned.

On authority of State ex rel. Haller v. Arnold, supra, 277 Mo. 474, 210 S. W. 374, which is very similar to this case in its pleadings, facts and conclusions, and in harmony with our own view of the right of the matter, it is ordered and adjudged that our peremptory writ of mandamus to the respondent Board of Election Commissioners of the City of St. Louis be issued as prayed, this opinion speaking as of March 2, 1933, the date of actual issuance thereof.

All concur.