In Re: Nomination Petitions of Michael A. O'Pake As Candidate for the Democratic Nomination for the Office of Attorney General of Pennsylvania and as Candidate for the Democratic Nomination for Senator in the General Assembly from the 11th District Representing Part of Berks County. Objection of Todd Alan East, William John Ertel, Jeannette Louise Franco, and Peter Mike Laspopoulos.

Argued March 3, 1980, before Judge ROGERS.

*Gregory M. Harvey,* of counsel, *Morgan, Lewis & Bockius,* for petitioners.

*James D. Crawford,* with him *Bernard G. Segal,* of counsel, *Schnader, Harrison, Segal & Lewis,* for respondent.

MEMORANDUM AND ORDER BY JUDGE ROGERS, March 6, 1980:

Todd Alan East, William John Ertel, Jeannette Louise Franco and Peter Mike Laspopoulos, hereinafter called objectors, have filed a petition to set aside the Nomination Petitions of Michael A. O'Pake as candidate for the Democratic Nomination for Attorney General of Pennsylvania, and as that party's candidate for Senator in the General Assembly from the 11th District representing part of Berks County. No question is raised as to the standing of any of the objectors and at our hearing evidence was adduced affirmatively showing Mr. Laspopoulos to have standing.

Senator O'Pake has indeed filed Nomination Petitions to have his name printed on the ballots and ballot labels assigned to the Democratic Party at the Primary Election of April 22, 1980 as a candidate for the office of Attorney General of Pennsylvania and also for the office of Senator from the 11th District. Article II, Section 6 of the Pennsylvania Constitution provides that no person holding any office in the Commonwealth to which a salary is attached shall be a

member of the General Assembly. Article IV, Section 6 provides that no person holding any office under the Commonwealth shall exercise the office of Attorney General. Therefore, the offices for which Senator O'-Pake seeks nomination are incompatible.

However, Senator O'Pake has publicly declared that if he is nominated as the Democratic Party candidate for both offices in the Primary and if he is elected to both offices in the General Election to be conducted November 4, 1980, he will not qualify for the office of Senator from the 11th District but he will qualify for the office of Attorney General. This course will create a vacancy in the office of Senator for the 11th District, which would be filled by a Special Election to be conducted in the 11th District. The candidate of the Democratic Party in such election would be chosen by the Democratic State Executive Committee.

Although in their petition to set aside Senator O'Pake's Nomination Petitions the objectors ask that we set aside both petitions, their counsel at our oral argument suggested that if they should prevail an appropriate remedy would be to afford Senator O'Pake 72 hours in which to decide for which of the two offices he desired to remain the candidate of the Democratic Party. We are not put to a choice of remedies because we have concluded that there is no impediment in Pennsylvania law to a person's candidacy for nomination to two incompatible offices.

Section 910(d) of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2870(d), requires each candidate to file with his Nomination Petition his affidavit stating "that he is eligible for such office." The objectors do not have recourse to the Constitution. Their case is founded on Section 910(d). They say it is impossible for a candidate truthfully to take oath on each of two nominations for two incompatible offices that he is eligible for the

office sought. Their principal authority are the cases of *State v. Adams,* 139 So.2d 879 (1962), and *Burns v. Wiltse,* 303 N.Y. 319, 102 N.E.2d 569 (1951). In *State v. Adams,* the Florida Supreme Court noted that the requirement of a Florida statute similar to Pennsylvania's Section 910(d), requiring the candidate to take oath that he is qualified, had been earlier held to have reference to the candidate's qualifications "applicable when elected and the term of office begins." This construction of the Florida statute, the *State v. Adams* court said, disposed of the incumbents' argument that in Florida an elected official can qualify for his party's nomination to become a candidate for new office during his incumbency in another incompatible office. In the latter case, the *State v. Adams* court said, the candidate would be making only one oath and seeking only one nomination to only one office and that his one oath would be truthful because he could resign the old office before entering upon the duties of the new position. On the other hand, a candidate who seeks the nomination for two offices at one time both of which he could not fill, "cannot make a truthful oath on every application to become a candidate for nomination to several state offices to the composite effect that he is qualified to hold them all." The objectors here have not directed us to any Pennsylvania authority declaring that Section 910(d) of the Pennsylvania Election Code, requiring an oath that the candidate "is eligible for such office" speaks with reference to eligibility at the time of election and when the term of the office begins. The case is distinguishable on this ground. Further, a second apparent basis of its holding is the Florida court's declaration that a candidate taking the oath that he is qualified should be held "to have represented . . . not only that he is qualified to fill, but also that if successful in his bid *will fill* the office. . . ." 139 So.2d at 884. (Emphasis in original.)

With respect, we disagree with this interpretation of a declaration of eligibility, certainly as it applies to Pennsylvania, which allows candidates for nominations to withdraw their petitions without reason, let or hindrance during the seven days succeeding the last day for filing.

The New York case on which the objectors rely, *Burns v. Wiltse, supra,* involved the candidacy of Wiltse for the office of District Attorney of Jefferson County, New York, and his intention to run for judge of the same county, formed after the incumbent judge's death when the petition for District Attorney could not be withdrawn. The Court of Appeals, it is true, held that such dual nominations would be contrary to the general spirit and intent of the New York election law and that they would, in the court's judgment, cause public expense for a useless purpose. The holding, however, seems finally to be based upon a provision of the New York Constitution guaranteeing the right of every citizen to vote "for all officers that now are or hereafter may be elective by the people.'' The court stated its belief that the people intended that "officers . . . 'elective by the people' were those who at the time of election could, if elected, take and hold the office.'' The court said the electors would be disenfranchised contrary to the Constitution whenever they vote for a candidate who may not legally qualify, if elected, to take and hold both offices to which he had been nominated. We know of no provision of the Pennsylvania Constitution similar to that of the New York Constitution referred to. Article I, Section 5 of the Pennsylvania Constitution guarantees the free exercise of the right of suffrage, clearly not affected here.

Other cases from other jurisdictions in support of the objectors' position are not helpful because in each a provision of state law specifically prohibited nomination for dual or multiple offices.

The highest courts of Illinois (*Misch v. Russell,* 26 N.E. 528 (1891)), Missouri (*State ex rel. Neu v. Waechter,* 58 S.W.2d 971 (1933)) and Nevada (*Kelly v. Reed,* 355 P.2d 969 (1960)) have upheld dual candidacies. While there are what seem to us insignificant factual distinctions between those cases and this (as indeed also exist between the cases relied on by the objectors and this), the courts in question clearly upheld dual candidacies. The court in the Illinois case writes "We know of no rule of law which prohibits a man's becoming a candidate or being voted for at the same election for two incompatible offices . . .". 26 NE. at 531. The Missouri court writes "There is absolutely nothing . . . justifying respondents' contention that a candidate cannot seek nomination for more than one office on the same party ticket." 58 SW.2d at 974. The Nevada court writes "The weight of authority, which we are inclined to follow, is that a statute or constitutional provision prohibiting one person from filling two offices at one time does not preclude a candidate from seeking or accepting nomination for more than one office in the absence of some statutory prohibition." 355 P.2d at 971. There is no rule of Pennsylvania law prohibiting Senator O'Pake's dual candidacy in this case and we discern no reason why this court should now make one. Indeed, there are compelling reasons for not doing so. First, the practice is by no means uncommon. We are reminded that in recent times Senators Humphrey and McGovern ran for the Senate and for President without adverse comment of which we are aware; and more to the point a plethora of Pennsylvania House members have in recent times sought higher office while at the same time seeking and winning reelection to their House seats. Second, we are unable to find any real difference between this case and the case of an officeholder who in the middle of his term runs for a second elective (and incompat-

ible) office—the usual process by which political personages in this country advance in power and responsibility. In the latter case, as in this, the officeholder if successful in his bid for new office will not continue in the old, with the same inconvenience and cost advanced as reasons why dual candidacies at the end of the term should be prohibited by the courts. Indeed, the only difference in the two circumstances is that the candidate in the case at bar signs two affidavits rather than one. We find this distinction insubstantial. Third, the matter of legislation forbidding dual candidacies has been twice proposed in the General Assembly and twice rejected in recent years.

Finally, public policy arguments can be made on both sides of the issue. It is true that dual candidacies may cause some public expense and some inconvenience to the electorate; we doubt that they confuse or mislead the electorate; and they certainly don't interfere with the free exercise of the right of suffrage. The prohibition of dual candidacies, on the other hand, would discourage persons who by faithful public service have earned the confidence and support of a smaller constituency from seeking to serve in a larger capacity.

Counsel for both parties have provided us with good briefs and arguments.

ORDER

AND Now, this 6th day of March 1980, the objectors' Petition to Set Aside the Nomination Petitions of Michael A. O'Pake is set aside and the Secretary of the Commonwealth is directed to include the name of Michael A. O'Pake on the ballots and ballot labels of the Democratic Party as a candidate for the office of Attorney General of Pennsylvania and as a candidate for Senator in the General Assembly from the 11th District representing part of Berks County.