LELAND M. NEWSOME AND WELDON HALL, PLAINTIFFS v. NORTH CARO-
LINA STATE BOARD OF ELECTIONS; M. H. HOOD ELLIS, CHAIRMAN,
GREGG O. ALLEN, WILLIAM A. MARSH, RUTH TURNER, JUNE K.
YOUNGBLOOD, MEMBERS, STATE BOARD OF ELECTIONS; AND ALEX K. BROCK,
EXECUTIVE SECRETARY-DIRECTOR, STATE BOARD OF ELECTIONS, DEFENDANTS, AND
WILLIAM BURNETTE, MARIAN LANGFORD HARKINS, HAROLD HUNT,
CLAUDE B. MARSHALL, SAMUEL B. McGINN, JR., DAVID MORGAN,
JUDY PERKINS, CHARLOTTE DEMENT TIPPETT AND STELLA TRIPP,
INTERVENING DEFENDANTS

No. 9110SC25

(Filed 3 March 1992)

1. **Appeal and Error § 440 (NCI4th)— reply brief—new matters in appellees' brief—reply considered**

     The Court of Appeals denied the appellees' motion to dismiss the appellants' reply brief where the matters appellees argued in their brief did not arise naturally and logically from the record and question presented. N.C.R. App. P. 28(h).

     **Am Jur 2d, Appeal and Error § 689.**

2. **Appeal and Error § 168 (NCI4th)— authority to call special election—new town board members seated—action not moot**

     A challenge to the State Board of Elections' authority to call a special election and the procedures employed by the Board was not moot even though the new town board members had been seated where appellants did not dispute the election or its results, but rather challenged the State Board's authority to call the special election and the procedures employed by the Board.

     **Am Jur 2d, Appeal and Error §§ 761-763, 769.**

3. **Elections § 93 (NCI4th)— municipal election—delay in obtaining approval of United States Attorney General—authority of Board to hold election**

The State Board of Elections had the authority to hold a special municipal election where the General Assembly ratified an act to incorporate the Town of North Topsail Beach; an election was to be held within a defined period to submit to the qualified voters of the area the question of incorporation; the act named the persons to serve as the initial mayor and aldermen until their successors were elected in the 1989 regular municipal election; the Onslow County Board of Elections began the preclearance process under the Voting Rights Act of 1965 with a written submission to the United States Attorney General; the Attorney General responded by letter requesting additional information; the additional material was sent, but the referendum did not occur because the preclearance was still pending; the preclearance was obtained and the special election was rescheduled for January 1990; the vote favored incorporation; the State Board of Elections entered an order directing the Onslow County Board of Elections to conduct an election for members of the governing body of the Town of North Topsail Beach; and this action was filed by two of the appointed members of the Town's Board of Aldermen. Although it was contended that the State Board of Elections had no authority to proceed under N.C.G.S. § 163-22.2 because the United States Attorney General never interposed an objection, the effect of an improper submission is tantamount to an objection by the Attorney General and is sufficient to authorize the State Board to intervene under its broad, remedial authority in the statute.

**Am Jur 2d, Elections §§ 57, 115.**

**Requirements under sec. 5 of Voting Rights Act of 1965 (42 USCS sec. 1973c) and implementing regulations that state or political subdivision changing voting procedures seek federal approval—Supreme Court cases. 70 L. Ed. 2d 915.**

4. **Elections § 93 (NCI4th)— special election—Administrative Procedure Act—exemption**

The State Board of Elections did not err by not following the procedures specified by the Administrative Procedure Act in calling a special election because N.C.G.S. § 163-22.2 contains

a grant of authority, limited to certain defined situations and with a time limitation, which exempted appellees from the rule making procedures of the A.P.A.

**Am Jur 2d, Elections §§ 44, 45, 183, 184.**

5. **Elections § 93 (NCI4th)— special election—convening of General Assembly—authority of Board Elections**

The action of the State Board of Elections in ordering a special election was not null and void under N.C.G.S. § 163-22.2, which gives the Board the authority to make interim rules and regulations for certain pending elections which become void 60 days after the convening of the next regular session of the General Assembly, because the session of the General Assembly which convened in 1990 was a short session, a continuation of the 1989 regular session.

**Am Jur 2d, Elections §§ 44, 45, 183, 184.**

APPEAL by plaintiffs from judgment entered 29 October 1990 in WAKE County Superior Court by *Judge George R. Greene.* Heard in the Court of Appeals 14 October 1991.

*Tharrington, Smith & Hargrove, by Michael Crowell,* for *plaintiffs-appellants.*

*North Carolina Department of Justice, by Charles M. Hensey,* for *defendants-appellees.*

*Johnson, Gamble, Mercer, Hearn & Vinegar, by Charles H. Mercer, Jr., and M. Blen Gee, Jr.,* for *intervening defendants-appellees.*

WYNN, Judge.

On 11 May 1989, the General Assembly ratified Senate Bill 335: "An Act to Incorporate the Town of North Topsail Beach, Subject to a Referendum." 1989 N.C. Sess. Laws Ch. 100. The Act described an area north of the Town of Surf City on Topsail Island in Onslow County to be included within the boundaries of the new town; it established the structure of the governing body to consist of a mayor and a five member Board of Aldermen; and named the persons to serve as the initial mayor and aldermen until their successors were elected in the 1989 regular municipal election. The Act also provided that "the Onslow County Board

of Elections shall conduct an election on a date set by it, to be not less than 60 nor more than 120 days after the date of ratification of this act, for the purpose of submission to the qualified voters of the area . . . the question of whether or not such area shall be incorporated as North Topsail Beach."

On 23 May 1989, the Onslow County Board of Elections set 5 September 1989, as the date to conduct the incorporation election. This date was 117 days after the date of ratification of Chapter 100.

Onslow County is subject to the provisions of Section 5 of the federal Voting Rights Act of 1965, 42 U.S.C. § 1973c (1988). Section 5 of the Act prohibits enforcement of any change in election practice or procedure in a covered jurisdiction until it is precleared by the United States Attorney General or the United States District Court for the District of Columbia. *Id.*

In May 1989, the Onslow County Board of Elections began the preclearance process by a written submission to the United States Attorney General. The Attorney General responded by letter to the Onslow County Board of Elections on 31 July 1989: "Our analysis indicates that the information sent is insufficient to enable us to determine that the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." The letter requested the county board to provide certain additional information about its submission. The letter also contained the following statement:

The Attorney General has sixty days in which to consider a completed submission pursuant to Section 5. This sixty-day review period will begin when this Department receives the information necessary for the proper evaluation of the change you have submitted. See the procedures for the Administration of Section 5 (28 C.F.R. 51.37(a)). Further, you should be aware that if no response is received within sixty days of this request, the Attorney General may object to the proposed change consistent with the burden of proof placed upon the submitting authority.

On 10 and 15 August 1989, the Onslow County Board of Elections sent additional information to the Attorney General. Because the Attorney General's actions on preclearance were still pending, the 5 September 1989 referendum did not occur; and, on 13 October 1989, the Attorney General wrote the Onslow County Board of

Elections: "You have advised us that the county did not conduct the September 5, 1989, special election. Accordingly, no determination by the Attorney General is required or appropriate with regard to that special election schedule and procedures . . . ." The letter also stated, "The Attorney General does not interpose any objections to the remaining changes in question."

The special election was rescheduled by the Onslow County Board of Elections with the approval of the State Board of Elections, precleared by the Attorney General by letter dated 27 December 1989, and held on 16 January 1990. The resulting vote favoring incorporation was certified on 18 January 1990.

The mayor and aldermen named in Chapter 100 took office on 24 January 1990. Thereafter, on 17 May 1990, the Onslow County Board of Elections provided to the State Board of Elections certified petitions containing the names of 142 of the 213 registered voters of the Town of North Topsail Beach requesting an election of town officers to be held "as soon as possible." The petitions sought the election "in view of the fact that the regular municipal election was not conducted when scheduled due to an objection entered by the U.S. Department of Justice."

At its meeting of 21 May 1990, the State Board of Elections unanimously adopted a motion ordering "an election consistent with authority in G.S. 163-22.2 on a day and date contained in a schedule that will provide ample time for submission to the U.S. Department of Justice for preclearance and comply with all preliminary provisions contained in Chapter 163 of the General Statutes of North Carolina." The State Board of Elections then entered an order directing the Onslow County Board of Elections to conduct an election for members of the governing body of the Town of Topsail Beach on 18 September 1990. The United States Attorney General precleared this election.

This action was filed by plaintiffs, two Chapter 100 appointed incumbent members of the Board of Aldermen of the Town of North Topsail Beach. Shortly thereafter, the additional defendants, one other incumbent alderman and eight candidates for the 18 September election, were allowed to intervene. Following a denial of the plaintiffs' motion to enjoin the 18 September election, a hearing on the merits was held on 12 October 1990 and judgment was entered against plaintiffs as follows: (1) the decisions and order of the State Board of Elections were fully authorized by and in

accord with law, (2) the 18 September 1990 election was valid, and (3) the election results could be certified. From this judgment, plaintiffs appealed.

## I.

[1]  Before considering the merits of appellants' arguments, we must address defendants-appellees' motion, made to this Court, to dismiss appellants' reply brief. Appellees contend that this Court should not consider the reply brief since appellees did not present additional or new questions for review, and the case was argued orally before this Court.

Rule 28(h) governs reply briefs and specifies that "[u]nless the court, on its own initiative, orders a reply brief to be filed and served, none will be received or considered by the court" unless an "appellee has presented in its brief new or additional questions as permitted by Rule 28(c)" or "the parties are notified under Rule 30(f) that the case will be submitted without oral argument." N.C.R. App. P. 28(h) (1991). A reply brief is "intended to be a vehicle for responding to matters raised in the appellees' brief" and is "not intended to be — and may not serve as — a means for raising entirely new matters." *Animal Protection Society v. North Carolina*, 95 N.C. App. 258, 269, 382 S.E.2d 801, 807 (1989).

In this case, appellants, in their reply brief, responded to two new issues raised in the briefs by defendants-appellees and intervening defendants-appellees. These issues concerned whether the appeal was moot and whether the plaintiffs lacked equity. Although appellees claim that they have adopted verbatim the question presented by appellants, the matters they argue in their brief do not arise naturally and logically from the record and question presented. We, therefore, deny appellees' motion to dismiss appellants' reply brief.

## II.

[2]  Next, prior to reviewing the merits of this case, we also must examine the argument presented by defendants-appellees and intervening defendants-appellees that this appeal is moot. The courts of this State only can rule on justiciable issues. *Poore v. Poore*, 201 N.C. 791, 161 S.E. 532 (1931); *Coastal Concrete Co., Inc. v. Garner*, 81 N.C. App. 523, 344 S.E.2d 376 (1986). Appellees contend that, because the new town board members have been seated, the case is moot and appellants must proceed by bringing a new

NEWSOME v. N.C. STATE BD. OF ELECTIONS

[105 N.C. App. 499 (1992)]

action in the nature of *quo warranto. See Cozart v. Fleming*, 123 N.C. 547, 31 S.E. 822 (1898). *Quo warranto*, which was a writ used to try title to an office, has been abolished, N.C. Gen. Stat. § 1-514 (1983), and replaced by a statutory action under N.C. Gen. Stat. § 1-515 (1991). Section 1-515 embodies the substance of the writ and provides, in pertinent part,

An action may be brought by the Attorney General in the name of the State, upon his own information or upon the complaint of a private party, against the party offending, in the following cases:

(1) When a person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this State, or any office in a corporation created by the authority of this State . . . .

*Id.* We find appellees' arguments are erroneous since appellants do not dispute the election or its results, but rather they challenge the State Board's authority to call the special election and the procedures employed by the Board. *See Ferguson v. Riddle*, 233 N.C. 54, 62 S.E.2d 525 (1950). We conclude, therefore, that there are justiciable issues presented for our review.

III.

The sole assignment of error raised by appellants concerns the State Board of Elections' authority to call the September 1990 special municipal election. Appellants base their assignment of error on the following: (1) the United States Attorney General never interposed an objection to any election, so the State Board had no authority to proceed under N.C. Gen. Stat. § 163-22.2 (1991); (2) even if there was authority to act, the Board did not follow the procedures specified by the North Carolina Administrative Procedure Act, N.C. Gen. Stat. §§ 150B-1 to 150B-57 (1991); and (3) even if there was authority to act and the resulting rule was procedurally correct, it became null and void sixty days after its promulgation because of the convening of the General Assembly's next regular session. For the reasons which follow, we reject appellants' contentions and affirm the decision of the trial court.

*State Board's Authority*

[3] Appellants contend that the United States Attorney General never interposed an objection to any election and, therefore, the

State Board had no authority to proceed under N.C. Gen. Stat. § 163-22.2 (1991). Section 163-22.2, in pertinent part, provides:

> In the event any portion of Chapter 163 of the General Statutes or any State election law or form of election of any county board of commissioners, local board of education, or city officer is held unconstitutional or invalid by a State or federal court or is unenforceable because of *objection interposed by the United States Justice Department under the Voting Rights Act of 1965* and such ruling adversely affects the conduct and holding of any pending primary or election, the State Board of Elections shall have authority to make reasonable interim rules and regulations with respect to the pending primary or election as it deems advisable so long as they do not conflict with any provisions of Chapter 163 of the General Statutes and such rules and regulations shall become null and void 60 days after the convening of the next regular session of the General Assembly.

*Id.* (emphasis added). The phrase "objection interposed" derives from Section 5 of the Voting Rights Act. *See* 42 U.S.C. § 1973c (1988). The Justice Department may interpose an objection if a change in election practice or procedure adversely affects the ability of minority persons to vote or elect candidates. *Beer v. United States*, 425 U.S. 130, 47 L.Ed.2d 629 (1976).

Appellants argue that the trial court disregarded section 163-22.2 in its conclusion of law: "6. N.C. Gen. Stat. § 163-22.2 provides the State Board of Elections with authority to reschedule an election which has been delayed because of the requirements of the Voting Rights Act of 1965." They insist that the State Board's authority exists only when the delay has occurred because of an "objection interposed," as defined under the Voting Rights Act, and not generally "because of the requirements of the Voting Rights Act of 1965."

Unlike criminal statutes or statutes in derogation of the common law which must be construed strictly, *Vogel v. Reed Supply Co.*, 277 N.C. 119, 177 S.E.2d 273 (1970), remedial statutes, such as N.C. Gen. Stat. § 163-22.2, must be construed liberally in the light of the evils sought to be eliminated, the remedies intended to be applied, and the legislative objective, *Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 259 S.E.2d 248 (1979); *Puckett v. Sellars*, 235 N.C. 264, 69 S.E.2d 497 (1952). Another tenet of statutory

construction is that the interpretation of a statute given by the regulatory agency involved, here the State Board of Elections, should be accorded considerable weight. *See Commissioner of Insurance v. North Carolina Automobile Rate Administration,* 294 N.C. 60, 241 S.E.2d 324 (1978).

We find, in the case at bar, .that the Onslow County Board of Elections was unable to conduct the 5 September referendum because the United States Attorney General had not given his approval. The failure to preclear or approve, although it did not result from an articulated objection, had the same effect as if an objection had been interposed: The election was not conducted within the time mandated by Chapter 100. The effect of an improper submission is, therefore, tantamount to an objection by the Attorney General and sufficient to authorize the State Board to intervene under its broad, remedial authority in section 163-22.2.

The State Board, in its order, also carried out the clear intention of the General Assembly as evidenced in Chapter 100. This Act carefully structured the manner in which the town would be created. Delay in bringing the town into existence did not change the intent expressed in Chapter 100 to have a municipal election within a few months after a favorable vote on incorporation. Based on the foregoing, we disagree with appellants' arguments on this issue.

### Procedural Defects

[4]   Appellants further contend that even if the State Board of Elections had authority to proceed under N.C. Gen. Stat. § 163-22.2, the Board failed to follow the procedures specified by the North Carolina Administrative Procedure Act ("A.P.A."), N.C. Gen. Stat. §§ 150B-1 to 150-57 (1991), in their 21 May 1990 order calling the special election. We disagree.

The relevant provision of the A.P.A. in effect at the time of the Board's action provided: "This Chapter shall apply to every agency, as defined in G.S. 150B-2(1), except to the extent and in the particulars that any statute . . . makes specific provisions to the contrary." N.C. Gen. Stat. 150B-1(c) (1990) (repealed); *see* 1991 N.C. Sess. Laws ch. 418, § 17 (amendments to A.P.A. effective on 1 October 1991). Section 163-22.2 did contain "specific provisions to the contrary" and granted the Board the "authority to make reasonable interim rules and regulations" that became "null and

void 60 days after the convening of the next regular session of the General Assembly." This grant of authority, limited to certain defined situations and with a time limitation, exempted appellees from the rule making procedures of the A.P.A. We, therefore, find that the trial court did not err in concluding that the Board acted in accordance with the law regarding the 21 May 1990 order.

## Regular Session of the General Assembly

[5] Finally, appellants argue that even if the Board had authority to act and did not violate the A.P.A., their action became null and void sixty days after its promulgation because of the convening of the General Assembly's next regular session. We disagree.

The Constitution of North Carolina provides: "The General Assembly shall meet in regular session in 1973 and every two years thereafter on the day prescribed by law." N.C. Const. art. II, § 11(1). *See Atkins v. Fortner*, 236 N.C. 264, 268, 72 S.E.2d 594, 596 (1952); *Garrou Knitting Mills v. Gill*, 228 N.C. 764, 765, 47 S.E.2d 240, 240 (1948). Under the directive in section 11(1), there are "regular" sessions of the General Assembly in the odd-numbered years after 1973. When the State Board ordered the special election in 1990, an even-numbered year, there was no "regular" session. The session of the General Assembly held in 1990 was a continuation of the 1989 "regular" session, commonly termed a "short" session, in which only a limited number of matters are considered. *See* H.R.J. Res. 34, 138th Leg., First Sess., 1989 N.C. Sess. 3064. Based on the foregoing, we find that the action by the Board was not null and void under N.C. Gen. Stat. § 163-22.2.

Based on our disposition of the issues in this case, we need not address appellants' remaining assignments of error. The decision of the trial court is,

Affirmed.

Judges WELLS and PARKER concur.