WILLIAM T. COMER, PLAINTIFF-APPELLANT v. JUDGE JAMES F. AMMONS, JR., JUDGE ROBERT J. STIEHL, III, AND THE STATE BOARD OF ELECTIONS, DEFENDANTS-APPELLEES

No. COA98-1441

(Filed 16 November 1999)

1. **Appeal and Error— mootness—election statutes—dual candidacies**

     Even though the 1998 election statutes N.C.G.S. §§ 163-323 and 163-106 have been rewritten to disallow superior court candidates from running for other offices during the same election and the same fact scenario will not be repeated, the Court of Appeals denied defendants' motion to dismiss plaintiff's appeal as moot because if the statutes in question were in violation of the North Carolina Constitution, then defendant-judges would be holding office unlawfully and there would have been no eradication of the effects of the alleged violation.

2. **Declaratory Judgments— constitutionality of election statutes—removal of officials from office—action by Attorney General not required**

     In a declaratory judgment action involving the constitutionality of 1998 election statutes N.C.G.S. §§ 163-323 and 163-106, defendants improperly argue that N.C.G.S. § 1-515, concerning the removal of an elected official in an action instituted by the Attorney General, is the appropriate action for this case since: (1) plaintiff is not disputing the election or its results; and (2) the removal of defendant-judges from office would only be the byproduct of the constitutional claim, and not the result of a direct challenge to the election.

COMER v. AMMONS

[135 N.C. App. 531 (1999)]

3. Elections— dual candidacies—constitutionality of statutes—rational and neutral classification

The trial court did not err in refusing to declare 1998 election statutes N.C.G.S. §§ 163-323 and 163-106 unconstitutional and in granting summary judgment in favor of defendant-judges who simultaneously ran for a superior court judgeship and a district court judgeship during the same election period since: (1) dual candidacies are not forbidden by the North Carolina Constitution unless other provisions serve to render them unconstitutional; (2) nonlawyers were not denied equal protection of the law, even though anyone who ran for two offices during the same filing period under the "loophole" had to be a lawyer, because of the rational and neutral classification governing the qualifications of superior court judges; and (3) the limitation that the candidate had to be a lawyer only applied when one of the offices was a superior court judgeship.

4. Elections— dual candidacies—constitutionality of statutes—empty seats getting appointed—requested relief at odds with argument

Even though plaintiff-voter contends that 1998 election statutes N.C.G.S. §§ 163-323 and 163-106 are unconstitutional since they allow candidates to run for more than one office and effectively remove the election process from the voters because a candidate winning both elections means the empty seat gets appointed, the trial court did not err in granting summary judgment in favor of defendant-judges who simultaneously ran for a superior court judgeship and a district court judgeship during the same election period since plaintiff's requested relief is to remove the two elected officials and any harm done to the election process would have been done by the appointed official.

5. Elections— dual candidacies—constitutionality of statutes—person prohibited from holding two offices

Although the North Carolina Constitution prohibits a person from holding more than one office, the trial court did not err in refusing to declare 1998 election statutes N.C.G.S. §§ 163-323 and 163-106 unconstitutional and in granting summary judgment in favor of defendant-judges who simultaneously ran for a superior court judgeship and a district court judgeship during the same election period since: (1) dual candidacy does not necessarily lead to the holding of dual offices; (2) the North Carolina

Constitution does not provide a fundamental right to vote, thereby allowing appointments of officials instead of relying entirely on elections; and (3) there is no implied promise that the candidate will serve in the office for which he is nominated.

Judge JOHN voting to dismiss appeal in a separate opinion.

Appeal by plaintiff from judgment entered 18 September 1998 by Judge Robert F. Floyd, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 26 August 1999.

*Winfrey & Leslie by Ronald E. Winfrey, and Walen & McEniry by James M. Walen for plaintiff.*

*Michael F. Easley, Attorney General, by Susan K. Nichols, Special Deputy Attorney General for defendant State Board of Elections.*

*Poyner & Spruill L.L.P., by David W. Long, for defendant Judge Stiehl.*

*Armstrong & Armstrong P.C., by L. Lamar Armstrong, Jr., for defendant Judge Ammons.*

WYNN, Judge.

In 1998, our General Statutes allowed a nominee for a superior court judgeship to run for another elected office during the same election. The plaintiff argues that the laws that allowed the defendant judges in this case to simultaneously run for a superior court judgeship and a district court judgeship were unconstitutional. We uphold the constitutionality of those laws and therefore affirm the trial court's grant of summary judgment in favor of the defendant judges.

## I. Statutory History

In 1996, the North Carolina General Assembly amended the State's election laws to allow a candidate for a superior court judgeship to run for more than one office on the same election day, beginning in 1998. Candidates could also run for *any* two offices, so long as the filing periods for the offices were not the same.

Although these sections have since been amended to prevent dual candidacies, the issues in the case before this Court are based on the

sections as they were in 1998. Therefore, all discussions and references, unless otherwise noted, will be to the statutes as they were in 1998.

The 1998 version of N.C. Gen. Stat. § 163-323 (Supp. 1997) read, in pertinent part:

> (e) Candidacy for More Than One Office Prohibited. No person may file a notice of candidacy for more than one office or group of offices described in subsection (b) of this section for any one election. If a person has filed a notice of candidacy with a board of elections under this section for one office or group of offices, then a notice of candidacy may not later be filed for any other office or group of offices under this section when the election is on the same date unless the notice of candidacy for the first office is withdrawn under subsection (c) of this section.

The referenced subsections (b) and (c) included only judgeships of the superior court.

The 1998 version of N.C. Gen. Stat. § 163-106 (Supp. 1998; 1995 N.C. Sess. Laws (1996 Second Extra Session) Chap. 9, §§ 8 and 24) read, in pertinent part:

> (h) No person may file a notice of candidacy for more than one office described in subsection (c) of this section for any one election. If a person has filed a notice of candidacy with a board of elections under this section for one office, then a notice of candidacy may not later be filed for any other office under this section when the election is on the same date unless the notice of candidacy for the first office is withdrawn under subsection (e) of this section; provided that this subsection shall not apply unless the deadline for filing notices of candidacy for both offices is the same.

The referenced subsections (c) and (e) applied to various state and federal elective offices, but did not include the office of superior court judge.

Taken together, §§ 163-323 and 163-106 created a "loophole" which allowed a candidate to run for a superior court seat and another office on the same election day, regardless of the filing periods. Other dual candidacies were allowed for any two offices, provided that the filing periods for nominations were not the same.

## II. Facts and Procedural History

Defendants Ammons and Stiehl were both incumbent district court judges for the 12th Judicial District for Cumberland County. They filed for reelection during the filing period of the first Monday in January to the first Monday in February 1998. Both ran unopposed for their district court seats in the general election.

On 28 February 1998, Judge Coy E. Brewer, Jr. resigned from his seat on the 12th District's Superior Court, leaving a vacancy. The State Board of Elections opened a one week filing period in March 1998 for this seat and both Judge Ammons and Judge Stiehl filed for the seat. Neither withdrew as candidates for the district court.[1] A total of six candidates filed for the superior court election.

Judge Stiehl was reelected without opposition to his district court seat on 3 November 1998. Judge Ammons won both the district court and the superior court elections, and has since been sworn in as a superior court judge. The vacancy he left in the district court has been filled by Judge Donald Clark, Jr., who was appointed by Governor James B. Hunt, Jr.

The plaintiff, William T. Comer, was a registered voter living in Cumberland County. He was not a candidate for any office in the 1998 elections. On 12 May 1998—after Judges Ammons and Stiehl filed their notices of candidacy but before the general election—Mr. Comer filed an action for declaratory judgment, urging the court to find N.C. Gen. Stat. §§ 163-106 and 163-323 unconstitutional under Article I, section 19 and Article VI, section 9 of the North Carolina Constitution. However, upon considering a forecast of the evidence to be presented at trial, the trial court granted summary judgment for the defendant judges. Following our denial of his request for a temporary stay and supersedeas, Mr. Comer perfected his appeal to this Court.

## III. Motion to Dismiss

### A. Mootness Argument

[1] Judges Ammons and Stiehl along with the State Board of Elections initially move this Court to dismiss Mr. Comer's appeal as moot. We deny that motion.

---

1. It should be noted that in 1998, while judicial candidates for District Court ran in partisan races, judicial candidates for Superior Court ran in non-partisan races. In this appeal, the plaintiff does not contend that this distinction creates any issues for this Court to consider.

An appeal which presents a moot question should be dismissed. *See Dickerson Carolina, Inc. v. Harrelson,* 114 N.C. App. 693, 443 S.E.2d 127, *review denied,* 337 N.C. 691, 448 S.E.2d 520 (1994). If the issues giving rise to the action become moot at any time during the proceedings, the court should dismiss the action. *See In Re Peoples,* 296 N.C. 109, 250 S.E.2d 890 (1978), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2859, 61 L. Ed. 2d 297 (1979). This is true even if the action is for a declaratory judgment. *See Pearson v. Martin,* 319 N.C. 449, 355 S.E.2d 496, *reh'g denied,* 319 N.C. 678, 356 S.E.2d 789 (1987).

In *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L. Ed. 2d 642, 649 (1979), the United States Supreme Court set forth a two-pronged test which renders a case moot when (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

In the case under consideration, Mr. Comer challenges the constitutionality of N.C. Gen. Stat. §§ 163-106 and 163-323 as they were in 1998. Those statutes have since been amended and therefore the alleged violation of the North Carolina Constitution has ceased. Moreover, the statutes have been rewritten to disallow superior court candidates from running for other offices during the same election, so this fact scenario will not be repeated. Since the allegedly unconstitutional statute has been repealed and no one else will be able to hold a dual candidacy, part of the *Davis* test has been satisfied.

However, part of the *Davis* test has *not* been met. Significantly, if the statutes in question were in violation of the North Carolina Constitution, then Judges Ammons and Stiehl are holding office unlawfully. If that is the case, then this violation has not ceased and there has been no eradication of the effects of the alleged violation. Thus, since the *Davis* test is not fully satisfied, we will address the merits of the case.

### B. *Quo Warranto* Argument

[2] Judges Ammons and Stiehl along with the State Board of Elections also argue that the case at hand should not be heard because the removal of an elected official must be done *quo warranto* (or more accurately, by its modern statutory equivalent) and therefore a request for declaratory judgment is no longer the proper means of redressing the problem. We disagree and find that a justiciable question remains for this Court to decide.

COMER v. AMMONS

[135 N.C. App. 531 (1999)]

N.C. Gen. Stat. § 1-514, et. al. (1996), which codifies the common law doctrine of *quo warranto*, reads in relevant part:

1-515. Action by Attorney General.

An action may be brought by the Attorney General in the name of the State, upon his own information or upon the complaint of a private party, against the party offending, in the following cases:

(1) When a person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this State, or any office in a corporation created by the authority of this State . . . .

Mr. Comer argues that § 1-515 is not appropriate to this action because he is challenging the constitutionality of an election statute, not disputing the election or its results. We agree.

In *Newsome v. N.C. State Bd. of Elections*, 105 N.C. App. 499, 415 S.E.2d 201 (1992), we addressed a similar situation. In that case, the plaintiffs filed an action to enjoin a special election of a mayor and Board of Aldermen. The injunction was denied, the election was held, and the new mayor and board were seated. On appeal, the appellees argued that the case was moot because the elected officials had been seated, and therefore a new action must be brought under § 1-515. This Court rejected that argument on the grounds that the plaintiffs were not challenging the election or its results, but were instead challenging the Board of Election's authority to call the election.

Similarly, Mr. Comer is not directly challenging the election or its results; rather, the main thrust of his argument is that the election statutes were unconstitutional. Although Mr. Comer cannot avoid arguing that the defendant judges are holding office in an unlawful manner (having been elected via an unconstitutional election),[2] his main argument lies not against the judges themselves, but against the statutes that allowed their election to office. Likewise, although a ruling for Mr. Comer might result in the removal of the judges from office, this would only be the by-product of the constitutional claim and would not be the result of a direct challenge to the election.

IV. Appellant's Constitutional Arguments

[3] Having decided that a justiciable issue still remains, we now address the substantive issue of whether the trial court properly

2. As noted earlier, this argument creates a justiciable issue for this Court to consider.

refused to declare N.C. Gen. Stat. §§ 163-106 and 163-323 unconstitutional. We affirm the trial court's ruling.

In general, our statutes are presumed to be constitutional. As the Supreme Court of North Carolina said in *Moore v. Knightdale Bd. of Elections*, 331 N.C. 1, 5, 413 S.E.2d 541, 543 (1992):

> Unless the Constitution expressly or by necessary implication restricts the actions of the legislative branch, the General Assembly is free to implement legislation as long as that legislation does not offend some specific constitutional provision . . . .

However, because the presumption that a statute passes constitutional muster is not conclusive, we must still determine if any provisions of the North Carolina Constitution serve to render the statute invalid.

Dual candidacies are not forbidden *per se* by the North Carolina Constitution. Therefore, the statutes in question that allow dual candidacies are constitutional unless other provisions serve to render them unconstitutional.

Mr. Comer first argues that N.C. Gen. Stat. §§ 163-106 and 163-323 should be declared unconstitutional because together they create a special class of favored candidates without a rational basis for creating such a class. He contends that because *only lawyers* are allowed to take advantage of the "loophole" and run for more than one office, lawyers have been granted a benefit which in effect denies non-lawyers the equal protection of the law. This argument, however, is flawed.

First, the State has a rational basis for allowing only lawyers to run for a superior court seat—judges should be qualified to handle the cases before them; in fact, the North Carolina Constitution requires that our superior court judges be authorized to practice law. N.C. Const. art. IV, § 22. Thus, anyone who ran for two offices under the "loophole" had to be a lawyer not because the State wanted a special class to be able to run for two offices, but because of the rational and neutral classification governing the qualifications of superior court judges.

Second, it was not only lawyers that were allowed to run for more than one office if the filing deadlines were different for the two offices. The limitation that the candidate be a lawyer applied when

one of the offices was a superior court judgeship, but other dual candidacies were available for nonlawyers. N.C. Gen. Stat. §§ 163-106(c) and 163-106(h) permitted nonlawyers to run for more than one of several offices so long as the filing periods were not the same. Given this fact, Mr. Comer cannot reasonably argue that lawyers, and lawyers only, were singled out for special treatment by being allowed to hold a dual candidacy.

[4] Mr. Comer's second argument is that by allowing candidates to run for more than one office, the election process is effectively removed from the hands of the voters. This assertion too is without merit.

To begin, although Mr. Comer does not actually argue that his fundamental right to vote has been infringed, we consider it prudent to address that issue.

A fundamental right is a right explicitly or implicitly guaranteed to individuals by the United States Constitution or a state constitution. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L. Ed. 2d 510 (1965). Fundamental rights are afforded the highest level of protection, and they can only be infringed upon if the state can show it has a compelling need to do so.

The right to vote *per se* is not a fundamental right granted by either the North Carolina Constitution or the United States Constitution. *See State ex rel Martin v. Preston*, 325 N.C. 438, 385 S.E.2d 473 (1989); *Rivera-Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 102 S.Ct. 2194, 72 L. Ed. 2d 628 (1982). What *is* fundamental is that once the right to vote has been conferred, the *equal* right to vote is a fundamental right. *White v. Pate*, 308 N.C. 759, 304 S.E.2d 199 (1983); *Rivera-Rodriguez v. Popular Democratic Party*.

Mr. Comer makes no claim that he was denied the same right to vote as other voters in his district. He therefore can make no claim that his fundamental right to an equal right to vote was infringed upon.

However, Mr. Comer does argue that the election process was frustrated by the dual candidacies because the power to choose officials was taken out of the hands of the voters. He argues that because the election process is the favored way to choose officials, appointments frustrate the election process. But, the relief requested by Mr. Comer does not match the harm he asserts.

Notably, he had the opportunity to vote for both the district court judgeship and the superior court judgeship. Nonetheless, he contends that because Judge Ammons—an elected official to the district court—chose instead to take the superior court seat, the filling of the empty district court seat by an appointed, not elected, official has caused him and other voters harm. Yet, Mr. Comer requests only that the election for the superior court seat be voided, and that Judges Ammons and Stiehl be barred from seeking election to that seat. Indeed, Mr. Comer does *not* request that the *district court* election also be voided and that the appointed judge—Judge Clark—be removed from office. Surely, if *any* harm was done to the election process, it was done when a judge was appointed, not elected, to the bench. Instead, Mr. Comer seeks to remove only the two *elected* officials. Patently, Mr. Comer's requested relief is at odds with his argument that the voting process was removed from the hands of the voters.

**[5]** Mr. Comer next contends that because the North Carolina Constitution prohibits a person from holding more than one office, a person should be barred from seeking election to more than one office. Despite the fact that the latter is not necessary to achieve the former—that is, a dual candidacy does not necessarily lead to the holding of dual offices—the weight of authority clearly allows dual candidacies when no affirmative prohibitions exist.

In pertinent part, Art. VI, § 9 of the North Carolina Constitution reads,

> (1) *Prohibitions.* It is salutary that the responsibilities of self-government be widely shared among the citizens of the State and that the potential abuse of authority inherent in the holding of multiple offices by an individual be avoided . . . No person shall hold concurrently any two offices in this state that are filled by election of the people.

In *Moore*, the Supreme Court of North Carolina explored the scope of the dual officeholding prohibition. *See Moore*, 331 N.C. 1, 413 S.E.2d 541. In that case, a North Carolina statute that required current office holders to resign from their office before running for a new office violated Art. VI, § 6 of the North Carolina Constitution because it added an extra qualification for office not required by the Constitution. Although the Court noted that the "resign to run" statute may have advanced the prohibition against dual officeholding found in § 9, the Court also found that

COMER v. AMMONS

[135 N.C. App. 531 (1999)]

Article VI, Section 9 itself contains no provision that prevents pursuing one office while holding another. Instead, for reasons apparent in its own text it condemns dual officeholding . . . The evil the section seeks to prevent is that of holding more than one office simultaneously. This evil is not present in the mere pursuit by an officeholder of another office.

*Id.* at 8-9, 413 S.E.2d at 545.

Extending the rationale of *Moore* to situations where one candidate seeks two offices—such as in the case before the Court—is appropriate. Allowing dual candidacy may not advance the prohibition against dual officeholding, but it would not, in and of itself, be an evil that the North Carolina Constitution seeks to prevent.

Other states have considered the question as to whether dual candidacy is permitted when dual officeholding is not. Indeed, several courts have found that dual candidacy should be allowed and their rationales help guide our decision in this case. *See, e.g., In Re Nomination Petitions of Michael A. O'Pake*, 422 A.2d 209 (Pa. Cmwlth. 1980) (compared dual candidacy to a candidate who runs for office while still holding another office). *See also, Kelly v. Reed*, 355 P.2d 969 (Nev. 1960); *Misch v. Russell*, 26 N.E. 528 (Ill. 1891); and *State ex rel Neu v. Waechter*, 58 S.W.2d 971 (Mo. 1933) (a prohibition against dual officeholding does not require a prohibition against dual candidacy).

In contrast, a lesser number of cases from other states have forbidden dual candidacy, but the particulars of those cases can be distinguished from the case at hand. For instance, in *Burns v. Wiltsie*, 102 N.E.2d 569 (N.Y. 1951), the New York Supreme Court disallowed dual candidacies despite the lack of constitutional or statutory prohibitions. The court relied on a provision of the New York Constitution which granted "the right of every citizen to vote 'for all officers that are now or hereafter may be elective [sic] by the people.' " *Id.* at 572. This language created an affirmative right in the citizens of New York to vote for all officers of the state. As discussed earlier, North Carolina's Constitution provides no such fundamental right to vote, thereby allowing appointments of officials instead of relying entirely on elections.

Similarly, *State ex rel Fair v. Adams*, 139 So.2d 879 (Fla. 1962) can also be distinguished from the present case. After finding no guidance under the Florida Constitution, statutes, or case law, the Florida

**COMER v. AMMONS**

[135 N.C. App. 531 (1999)]

Supreme Court relied on an oath that all candidates had to take which said, in essence, that the candidate was qualified to accept the office he was running for. The implication was that the candidate promised to serve in the position for which he was nominated, and could therefore not truthfully promise to serve in two offices. North Carolina's candidacy requirements, on the other hand, contain no such oath—the law requires only proof of residency, party affiliation, and voter registration. N.C. Gen. Stat. §§ 163-106 and 163-323. There is no implied promise that the candidate will serve in the office for which he is nominated.

Finally, Mr. Comer argues that N.C. Gen. Stat. §§ 163-106(c) and 163-106(h) somehow act to bar a person from running for both the district court and the superior court judgeships. We summarily dismiss this argument since Mr. Comer recognizes in his brief that the statutory language *does* actually allow dual candidacy.

## V. Conclusion

Since Mr. Comer offered no viable challenge to the constitutionality of N.C. Gen. Stat. §§ 163-106 and 163-323, the trial court correctly refused to declare the statutes unconstitutional. Likewise, because there was no genuine dispute as to questions of fact or any reasonable dispute as to questions of law, the trial court correctly granted the defendants' motions for summary judgment. (Summary judgment is appropriate if there is no genuine issue as to any material fact and any party is entitled to a judgment as a matter of law. N.C.R. Civ. P. 56(c) (1990).)

The decision of the trial court is,

Affirmed.

Judge EDMUNDS concurs.

Judge JOHN concurs in a separate opinion.

Judge JOHN concurring in the result only with separate opinion.

The majority properly points out that

Mr. Comer is not directly challenging the election or its results; rather, the main thrust of his argument is that the election statutes were unconstitutional.

The majority further acknowledges that the statutes challenged by Mr. Comer

> have since been amended and therefore the alleged violation of the North Carolina Constitution has ceased. Moreover, the Statutes have been rewritten to disallow superior court candidates from running for other offices during the same election, so this fact scenario will not be repeated.

Our Supreme Court has stated,

> [w]henever during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain an action merely to determine abstract propositions of law. . . . If the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action.

*Simeon v. Hardin,* 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994) (citations omitted). This is true even if, as here, the action is brought as a declaratory judgment action. *Pearson v. Martin,* 319 N.C. 449, 451, 355 S.E.2d 496, 498 (1997).

In the case *sub judice,* the "questions originally in controversy between the parties are no longer at issue [and] the case should be dismissed." *Simeon,* 339 N.C. at 370, 451 S.E.2d at 866. However, the majority having elected to address Mr. Comer's appeal, I concur in the result reached in the majority opinion.